SUSAN M. CHEHARDY, Chief Judge.
|<>On appeal, defendant challenges his conviction for simple burglary, multiple offender adjudication, and enhanced sentence. For the reasons that follow, we affirm defendant’s conviction and enhanced sentence but remand for correction of the commitment and setting of a restitution schedule.

PROCEDURAL HISTORY

On January 24, 2012, the Jefferson Parish District Attorney filed a bill of information charging defendant, Vincent M. Castillo, with simple burglary, in violation of La. R.S. 14:62 (count one) and unauthorized use of a movable in excess of $1,000.00, in violation of La. R.S. 14:68 (count two). On January 30, 2012, defendant was arraigned and pled not guilty.
On January 22, 2013, the counts were severed for trial. That day, defendant’s trial on the charge of simple burglary commenced. After three days of testimony and evidence, the six-person jury unani *633 mously found defendant guilty as charged. On March 1, 2013, the trial judge sentenced defendant to ten years imprisonment with the Department of Corrections.
Meanwhile, the State filed a multiple offender bill of information alleging that defendant was a second felony offender, which defendant denied. On March 25, 2013, [¡¡the trial judge heard the allegations of the multiple bill then found that the State had proven that defendant was a-second felony offender. Thereafter, the trial judge vacated defendant’s original sentence for simple burglary and imposed an enhanced sentence of twenty years imprisonment at hard labor without benefit of probation or suspension of sentence.
On March 26, 2013, the State filed a motion to reconsider sentence seeking restitution, which the trial judge granted. On June 28, 2013, after a hearing, the trial judge ordered defendant to pay $5,000.00 in restitution to the burglary victim.[1] Subsequently, defendant filed both pro se and counseled motions for appeal, which the trial judge granted.

FACTS

At trial, Lea Fink testified that she met defendant in 2007 when she began working for him as a process server. In 2008, the couple, who were never married, had a son; their relationship, however, was tumultuous.
In 2009, Fink purchased a house at 509 Airline Park Boulevard in Jefferson Parish.[2] Fink stated that she was still staying most nights at her mother’s house so, in July, August, and September of 2009, defendant, who was doing renovation work at the property, slept at 509 Airline Park without her permission. After a particular incident of simple battery[3] on September 10, 2009, Fink obtained a protective order against defendant. On that protective order dated September 11, 2009, Fink’s address was listed 14as 509 Airline Park, and defendant’s address was listed as “temporary, unknown.” That order expired on December 11, 2009.
After September of 2009, Fink only saw defendant on special occasions to allow him to visit their son, and, during those infrequent events, someone from her family was present. Fink testified that she did not give defendant permission to be at her house at any time in 2010 or 2011.
On October 26, 2011, Fink obtained a “permanent”[4] protective order against de *634 fendant. In that order, the trial judge ordered defendant not to follow, stalk, harass, or threaten Fink.
However, on November 17, 2011, Fink, who was staying at her mother’s house with her children, learned that defendant was at 509 Airline Park so she contacted the police. When she tried to unlock her front door, her key did not fit the lock. Fink testified that she did not give permission for anyone to change the lock. Soon thereafter, defendant arrived at 509 Airline Park and presented a protective order that he had fraudulently obtained, listing his address as 509 Airline Park.[5] The deputies informed Fink that, if she did not leave the property, she would be arrested for violating a protective order.
On or about December 2, 2011, Fink saw yard signs advertising a garage sale scheduled to take place at 509 Airline Park Boulevard on December 3 and 4, 2011. Around that same time, Fink also observed advertisements of her property for sale on “Craigslist,” including her son’s bed, a sand box, a wagon, and a mattress for her | ¡^children. Fink testified that she did not authorize defendant to sell her property on Craigslist or to hold a garage sale at her house.
On Monday, December 5, 2011, Fink appeared at the hearing on the protective order that defendant fraudulently obtained against her. At that hearing, defendant’s protective order was dismissed. Immediately thereafter, Fink went to her house and waited for deputies to arrive to escort her into the house. While she was waiting, defendant arrived at the house, unlocked the door, and went inside. The deputies who arrived thereafter misinformed her regarding defendant’s right to remain at the house so she left her without confronting defendant.
On December 9, 2011, Fink finally went to the Fourth District Patrol Division and gave her statement to Sergeant Al West of the Jefferson Parish Sheriffs Office (“JPSO”). Later that day, Sergeant West accompanied Fink to 509 Airline Park. Fink tried to open her front door with her key to no avail. Eventually, she found an open window in the kitchen and they gained entry into the house.
After entering the house, Sergeant West found items that belonged to defendant, including a Jefferson Parish Correctional Center Handbook and business cards. Sergeant West also found the purchase agreement for 509 Airline Park, which listed Fink as the sole owner of the property.
Sergeant West testified that Fink told him that some of her personal property was missing from her house. Fink stated that, without her permission, defendant had advertised her and her children’s belongings for sale on Craigslist and held a garage sale on December 3 and 4, 2011.
Sergeant West subsequently arrested defendant for unauthorized entry of 509 Airline Park. Sergeant West advised defendant of his rights, which defendant indicated he understood.
| fiDebra Broussard, who was Fink’s neighbor, testified that she went to the garage sale at Fink’s home in 2011. *635 Broussard testified that, during the garage sale, Fink’s house was a “mess” and that “the whole house” was for sale. At the garage sale, Broussard saw defendant selling things and receiving money.
After the State rested, the defense called Steven Lauridsen, who testified that he had known defendant for more than three years and had worked for defendant. Lauridsen testified that he and defendant were no longer friends because defendant accused him of stealing.
Lauridsen further testified that, in 2009, he lived and did remodeling work at 509 Airline Park Boulevard for approximately three months. When he lived there, no one other than defendant lived at 509 Airline Park. Lauridsen testified that, during the time that he lived there, Fink slept at 509 Airline Park Boulevard occasionally and defendant stayed there four or five nights a week. Lauridsen believed that in 2009 defendant was dating Fink.
Lauridsen recalled that defendant had storage units and that, in 2009, he assisted defendant in bringing approximately six truckloads of his property from those storage units to the house at 509 Airline Park. Lauridsen testified that some of the items that Fink claimed were her property were similar to items that he helped defendant bring out of storage, but he could not swear that they were the same items. Lauridsen did not recall bringing anything very large from the storage unit.
The defense also called Beverly Cotting-ham, who testified that she had known defendant for about seven years. Cotting-ham believed that the last time she saw defendant was when she helped him move items from his storage unit. When questioned, she was unsure of the date but believed that they brought the items to 509 Airline Park. Cottingham testified that she did not help load or unload the items brought from ^defendant’s storage units but remembered that it took defendant approximately fifteen minutes to load the truck and fifteen minutes to unload it.
After hearing the testimony and evidence, the six-person jury unanimously found defendant guilty as charged. On appeal, defendant, both pro se and through counsel, challenges his conviction, multiple offender adjudication, and enhanced sentence, including the restitution.

LAW AND ARGUMENT

On appeal, defendant raises 23 assignments of error, including five counseled and 18 pro se assignments. In his five counseled assignments, defendant argues: first, the trial judge erred in failing to grant a mistrial when the prosecutor mentioned “other crimes” evidence that had specifically been excluded after a Prieur hearing; second, the trial judge erred in allowing two jurors to remain in the venire after the defense challenged them for cause because they could not be fair and impartial; third, the trial court erred in dismissing a third juror from the venire even though he was accepted by both the State and the defense; fourth, the trial judge erred in failing to grant defendant’s motion to quash the multiple bill; and, fifth, the trial judge erred in imposing an unconstitutional sentence.
In his next 18 assignments of error, which are raised pro se, defendant alleges: sixth, eleventh, and twentieth, the evidence was insufficient to support his simple burglary conviction because the defense witnesses refuted the alleged victim’s testimony and the trial judge erred in denying his motion for post-verdict judgment of acquittal; seventh and twenty-second, defendant seeks appointment of appellate counsel, a copy of the appellate record, and an extension of time within which to file an appellate brief; eighth and fifteenth, defendant *636 alleges that his trial counsel was ineffective for failing to object to the prosecutor’s references to domestic violence and for taking three years to obtain certain evidence which proved that the victim committed perjury; ninth, defendant ^alleges that the trial court erred by denying his motion for a continuance to obtain evidence of the victim’s perjury; tenth, the trial court erred in denying defendant’s motion to obtain certain Craigslist account information; twelfth, the trial court erred in awarding $5,000.00 in restitution; thirteenth, the trial court erred by denying defendant’s request to testify at a future restitution hearing after his conviction is final; fourteenth, the trial court erred in denying defendant’s motion to continue questioning the victim as to the restitution sought; sixteenth, the trial court erred in finding that the State proved that defendant was a second felony offender because the State failed to prove that he had been previously convicted of attempted extortion; seventeenth, defendant argues that he was denied effective assistance of appellate counsel; eighteenth, the trial judge erred in considering the victim impact statement at the sentencing hearing; nineteenth, the multiple bill and restitution hearings were “untimely” because they occurred after defendant’s pro se motion for appeal was granted; twenty-first, the trial court erred in denying defendant’s motion for new trial; and finally, twenty-third, defendant argues that the trial court imposed an excessive sentence.

DISCUSSION

Sufficiency of the Evidence

When the issues on appeal relate to both the sufficiency of the evidence and one or more trial errors, the reviewing court should first determine the sufficiency of the evidence by considering the entirety of the evidence. State v. Hearold, 603 So.2d 731, 734 (La.1992). If the reviewing court determines that the evidence was insufficient, then the defendant is entitled to an acquittal, and no further inquiry as to trial errors is necessary. Id. Alternatively, when the entirety of the evidence, both admissible and inadmissible, is sufficient to support the conviction, the defendant is not entitled to an acquittal, and the reviewing court must consider the assignments of trial error to [ 9determine whether the accused is entitled to a new trial. Id. Therefore, the sufficiency of the evidence is addressed first.
The question of sufficiency of the evidence is properly raised in the trial court by a motion for post-verdict judgment of acquittal under La.C.Cr.P. art. 821. State v. Bazley, 09-358, p. 18 (La.App. 5 Cir. 1/11/11), 60 So.3d 7, 17, writ denied, 11-0282 (La.6/17/11), 63 So.3d 1039. Here, defendant filed a motion for post-verdict judgment of acquittal challenging the sufficiency of the evidence. Therefore, this error is properly before this Court on appeal.
By these assignments,[6] defendant argues that the evidence was insufficient to support his simple burglary conviction because he had authorization, as evidenced by the protective order, to enter the residence at 509 Airline Park Boulevard, which had been his residence since June of 2009. Defendant further contends that the State failed to show that he entered the residence with the specific intent to commit a theft or felony therein. Finally, defendant contends that the jury erred in its credibility determination.
In reviewing the sufficiency of the evidence, an appellate court must determine that the evidence, whether direct or *637 circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Neal, 00-0674 (La.6/29/01), 796 So.2d 649, 657, cert. denied, 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002).
In cases involving circumstantial evidence, the trial court must instruct the jury that, “assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.” La. R.S. 15:438. The reviewing court is not required to determine whether another possible hypothesis of |ininnocence suggested by the defendant offers an exculpatory explanation of events. Rather, the reviewing court must determine whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt. State v. Mitchell, 99-3342 (La.10/17/00), 772 So.2d 78, 83; State v. Washington, 03-1135 (La.App. 5 Cir. 1/27/04), 866 So.2d 973, 977.
In the instant case, defendant was convicted of simple burglary, which is defined in pertinent part as “the unauthorized entering of any ... dwelling ... with the intent to commit a felony or any theft therein.” La. R.S. 14:62. Specific intent is required for a conviction for simple burglary, and it may be inferred from the circumstances and actions of the accused. State v. Naquin, 10-474 (La.App. 5 Cir. 2/15/11), 61 So.3d 67, 71. Specific criminal intent is defined as “ ‘that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act.’ ” Id. Therefore, to convict the defendant, the State was required to prove beyond a reasonable doubt that defendant entered the dwelling without authorization and had the specific intent to commit a felony or theft therein. Id. at 72.
Here, the State presented evidence that defendant entered Fink’s home without authorization. Fink, the sole owner of the dwelling, testified that defendant did not have her permission to enter her house at 509 Airline Park Boulevard on any date in 2010 or 2011. Further, contrary to defendant’s assertion that he was authorized through his invalid protective order, the State presented evidence that the victim had obtained a valid protective order on October 26, 2011 forbidding defendant from entering her property.
The State also presented evidence that defendant entered Fink’s home with the intent to commit a theft therein. La. R.S. 14:67(A) defines theft as “the misappropriation ... of anything of value which belongs to another, either without the consent of the other ..., or by means of fraudulent conduct.... An intent to deprive the other permanently of | ^whatever may be the subject of the misappropriation or taking is essential.” The evidence showed that defendant fraudulently obtained a protective order against Fink using Fink’s own address then changed the locks to prevent her from entering the house. Further, without her consent, defendant held a garage sale at Fink’s house and sold her property with the intent to permanently deprive Fink and her children of their property.
The jury was presented with all of the evidence and found Fink’s testimony to be more credible than that of the defense witnesses. The credibility of witnesses is within the sound discretion of the trier of fact, who may accept or reject, in whole or *638 in part, the testimony of any witness; the credibility of the witnesses will not be reweighed on appeal. State v. Rowan, 97-21 (La.App. 5 Cir. 4/29/97), 694 So.2d 1052, 1056.
Considering the entire record and viewing the evidence in the light most favorable to the State, we find that the State presented sufficient evidence to convince a rational trier of fact beyond a reasonable doubt that defendant was guilty of entering Fink’s dwelling without authorization with the specific intent to commit a theft therein. This argument lacks merit.
We now turn to the remainder of defendant’s briefed[7] assignments of error,[8] which we will address, for purposes of clarity, not in the order in which they were listed in defendant’s briefs but grouped by the issues raised, including trial errors, sentencing errors, ineffective assistance of counsel, and, finally, errors patent.

112Trial Errors

Jury challenges

In this assignment of error,[9] defendant argues that the trial judge erred by denying his challenges for cause in connection with two prospective jurors, Leslie Gau-treaux and Archie Coulon. He contends that those prospective jurors’ responses showed that they could not be fair and impartial because they thought essentially that he had to prove his innocence. The State responds that the trial judge was correct in denying those challenges for cause because both prospective jurors were rehabilitated.
The record reflects that Gautreaux and Coulon were in the first panel of prospective jurors. During defense voir dire, defense counsel questioned the prospective jurors about their opinion regarding the defendant’s right against self-incrimination and the defendant’s presumption of innocence. Following defense voir dire of the first panel, defense counsel challenged Gautreaux for cause, saying that she had indicated that she felt defendant was guilty “just because he was sitting there.” The prosecutor responded that Gautreaux said defendant might have or must have done something to be here but that she under *639 stood that she had to look at the evidence presented. The trial judge agreed with the prosecutor and noted that Gautreaux had subsequently “re-qualified herself’ by saying she would have to listen to the evidence before making a decision. The trial judge denied defense counsel’s challenge for cause as to Gautreaux, and defense counsel noted his objection.
Next, defense counsel also challenged Coulon for cause, stating that he basically had the same response to his questions, namely, that defendant must have done something “just for sitting here.” The prosecutor responded that her notes indicated Coulon said he agreed with Gau-treaux, but that he would also judge on the evidence. The trial judge stated that he was likewise aware of what Coulon had said. He determined |isthat Coulon too had rehabilitated himself and denied that motion for cause. Defense counsel noted his objection to the trial judge’s ruling.
The Sixth Amendment to the United States Constitution guarantees the accused the right to a trial by an impartial jury. State v. Anderson, 06-2987 (La.9/9/08), 996 So.2d 978, 995, cert. denied, 556 U.S. 1165, 129 S.Ct. 1906, 173 L.Ed.2d 1057 (2009); State v. Munson, 12-327 (La.App. 5 Cir. 4/10/13), 115 So.3d 6, 12, writ denied, 13-1083 (La.11/22/13), 126 So.3d 476. Further, Article I, § 17 of the Louisiana Constitution guarantees the right to full examination of prospective jurors and the right to challenge those jurors peremptorily. La.C.Cr.P. art. 797 allows the defendant or the State to challenge a juror for causes on the ground that he is not impartial or that he will not accept the law as given to him by the court. La.C.Cr.P. art. 797(2) and (4).
To prove an error warranting reversal of both the conviction and sentence, a defendant must show that he has exhausted all of his peremptory challenges and that the trial court erroneously denied a challenge for cause. State v. Mickel, 07-47 (La.App. 5 Cir. 5/29/07), 961 So.2d 516, 522, writ denied, 07-1422 (La.1/7/08), 973 So.2d 732. Additionally, the defendant must show that, after the trial court denied his challenge for cause, he used one of his peremptory challenges curatively to remove that juror — thereby reducing his number of peremptory challenges — or waive the issue on appeal. State v. Campbell, 06-286 (La.5/21/08), 983 So.2d 810, 856, cert. denied, 555 U.S. 1040, 129 S.Ct. 607, 172 L.Ed.2d 471 (2008).
A challenge for cause- should be granted, even when a prospective juror declares the ability to remain impartial, if the juror’s responses as a whole reveal facts from which bias, prejudice, or inability to render a judgment according to law may be reasonably implied. However, a prospective juror’s seemingly prejudicial response is not grounds for an automatic challenge for cause, and the trial court’s refusal to excuse the juror on the ground that he is not impartial is not an abuse of discretion, if after further | ^questioning the potential juror demonstrates a willingness and ability to decide the case impartially according to the law and evidence. State v. Lindsey, 06-255 (La.1/17/07), 948 So.2d 105, 108; State v. Wilson, 09-170 (La.App. 5 Cir. 11/10/09), 28 So.3d 394, 406-07, writ denied, 09-2699 (La.6/4/10), 38 So.3d 299.
In ruling on challenges for cause, the trial judge is vested with broad discretion; his ruling will be reversed only when a review of the entire voir dire reveals that the judge’s exercise of discretion was arbitrary and unreasonable with resultant prejudice- to the accused. This is necessarily so because the trial court has the benefit of seeing the facial expressions and hearing the vocal intonations of the *640 members' of the jury venire as they respond to questioning by the parties’ attorneys. Such expressions and intonations are not readily apparent at the appellate level where a review is based on a cold record. Munson, 115 So.3d at 12. Therefore, this Court will not disturb such a decision by the trial judge unless a review of the voir dire as a whole indicates an abuse of discretion. State v. Williams, 02-1188 (La.App. 5 Cir. 4/8/03), 846 So.2d 22, 28.
Here, our review reveals that defense counsel exhausted all six of his peremptory challenges,[10] which included two challenges used to remove Gautreaux and Coulon. Thus, this issue was not waived on appeal. State v. Campbell, supra.
As to Ms. Gautreaux, she initially said that defendant must have done something to be here, that defendant would not be here if somebody had not accused him of something, and that she thought there was proof that he did it since he was accused of it. However, after further questioning, Gautreaux said that she would consider a “not guilty” verdict even if defendant did not testify and did not present any evidence. As to Mr. Coul-on, he initially said that defendant must have done something wrong if he was picked up and brought to jail, but later stated that he would make his judgment based on the evidence presented by the State and that he would not hold it against defendant if he did not | ^present any evidence. As such, we find that the trial judge did not abuse his discretion by denying defendant’s challenges for cause as to Gautreaux and Coulon. This argument lacks merit.
In this assignment of error,[11] defendant argues that the trial judge erred by dismissing a juror, Rena Washington, from the venire due to a prior felony conviction. He contends that the juror should have been able to serve on the jury because he was automatically pardoned as a first offender under La. R.S. 15:572. The State responds that the trial judge did not err by excusing the juror since he admittedly did not receive a gubernatorial pardon, which is required for jury service under La.C.Cr.P. art. 401.
The question of a juror’s qualifications is addressed to the sound discretion of the trial judge within the bounds prescribed by law; and, although the trial judge’s ruling in these matters is subject to review, it will not be disturbed in the absence of clear abuse. State v. Mitchell, 08-136 (La.App. 5 Cir. 1/13/09), 7 So.3d 720, 734 (citing State v. Scott, 278 So.2d 121 (La.1973)).
Article V, § 33(A) of the Louisiana Constitution provides: “A citizen of the state who has reached the age of majority is eligible to serve as a juror within the parish in which he is domiciled. The legislature may provide additional qualifications.” La.C.Cr.P. art. 401(A)(5) provides that, in order to qualify to serve as a juror, a person must “[n]ot ... have been convicted of a felony for which he has not been pardoned by the governor.”
Restoration of full rights of citizenship upon release from federal or state supervision under Article I, § 20 does not restore a convict’s right to sit on a jury. State v. Jacobs, 04-1219 (La.App. 5 Cir. 5/31/05), 904 So.2d 82, 91, writ denied, 05-2072 (La.4/28/06), 927 So.2d 282, cert. denied, 549 U.S. 956, 127 S.Ct. 385, 166 L.Ed.2d 276 (2006). Only basic rights *641 such as the right to vote, work, or hold public office are restored. Id.
Louisiana law has never recognized the automatic first offender pardon as being a full pardon and restoring the pardoned individual to the status of innocence.[12] To the contrary, the law has consistently distinguished between the full and complete scope of the governor’s pardon and the limited scope of the first offender pardon. State v. Lemoine, 05-265 (La.App. 5 Cir. 11/29/05), 919 So.2d 727, 729, writ denied, 05-2564 (La.9/15/06), 936 So.2d 1254.
In the instant case, Washington indicated that he had not received a gubernatorial pardon. Therefore, under La.C.Cr.P. art. 401(5), he was not qualified to sit as a juror in this case. As such, we find no error in the trial judge’s excusal of Washington from the jury. This argument lacks merit.

Evidentiary rulings

By this assignment,[13] defendant argues that the trial judge erred in admitting “other crimes” evidence and erred in failing to grant a mistrial when the prosecutor mentioned “other crimes” evidence that had specifically been excluded after a Pri-eur [14] hearing.
Defendant argues that a mistrial should have been declared when the prosecutor mentioned during closing arguments that he was the subject of a permanent protective order based upon a stalking charge. Defendant contends that this remark constituted “other crimes” evidence that was specifically excluded after a Prieur hearing, which prejudiced him. The State responds that defendant was not prejudiced by its mention of 117stalking in closing argument because the jury heard testimony from the victim regarding defendant’s arrest for stalking her that led to her procurement of a permanent protective order against defendant. Further, defense counsel elicited testimony about stalking during his cross-examination of Assistant District Attorney Tonia Williams. The State further responds that any error was harmless as the remark was merely cumulative to trial testimony and there was strong evidence of defendant’s guilt.
On October 11, 2012, the State filed a Notice of Intent to Use Evidence of Other Bad Acts. In that notice, the State listed nine prior bad acts and the trial judge allowed introduction of evidence of five of those acts including: defendant hitting Fink on July 11, 2009; defendant hitting Fink on September 10, 2009; Fink obtaining a protective order against defendant on September 11, 2009; Fink obtaining a “permanent” protective order against de *642 fendant on October 26, 2011; and defendant filing a false petition for protection from Fink on November 14, 2011 that was dissolved on December 5, 2011.
During the cross-examination of one of the State’s witnesses, Assistant District Attorney Tonia Williams, defense counsel questioned Williams about the “permanent” protective order obtained by Fink against defendant on October 26, 2011. In his questioning, defense counsel referred to a pending stalking[15] charge.
During closing arguments, the prosecutor stated in pertinent part:
But just as the system had failed her when [defendant] got a Restraining Order preventing her from going into her home, it failed her on November 17th as Deputy [Doe] only saw the expired Order in the computer.
He didn’t see the Order that had been issued October 26th was permanent. The one that was issued based on a stalking charge.
| ^Immediately, defense counsel moved for a mistrial, arguing that the stalking charge was specifically excluded from the “other crimes” notice. The prosecutor correctly responded that testimony regarding the pending offense was elicited by the defense. The trial judge denied defendant’s motion for mistrial and defense counsel noted his objection.
La.C.Cr.P. arts. 770 and 771 govern improper comments made during closing arguments and authorize the trial court to correct a prosecutor’s prejudicial remarks by ordering a mistrial or admonishing the-jury, at the defendant’s request. State v. Foster, 09-837 (La.App. 5 Cir. 6/29/10), 44 So.3d 733, 742, writ denied, 10-1775 (La.4/25/11), 62 So.3d 84. A mistrial is a drastic remedy and is warranted only when trial error results in substantial prejudice to a defendant, depriving him of a reasonable' expectation of a fair trial. State v. Lagarde, 07-123 (La.App. 5 Cir. 5/29/07), 960 So.2d 1105, 1113-14, writ denied, 07-1650 (La.5/9/08), 980 So.2d 684. Whether a mistrial should be granted is within the sound discretion of the trial court, and the denial of a motion for mistrial will not be disturbed absent an abuse of discretion. Id. at 11, 960 So.2d 1105.
La.C.Cr.P. art. 774 reads:
The scope of argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the State or defendant may draw therefrom, and to the law applicable to the case.
The argument shall not appeal to prejudice.
The State’s rebuttal shall be confined to answering the defendant’s argument.
A prosecutor retains “considerable latitude” when making closing arguments. State v. Taylor, 93-2201 (La.2/28/96), 669 So.2d 364, 374, cert. denied, 519 U.S. 860, 117 S.Ct. 162, 136 L.Ed.2d 106 (1996). Further, the trial judge has broad discretion in controlling the scope of closing arguments. State v. Casey, 99-23 (La.1/26/00), 775 So.2d 1022, 1036, cert. denied, 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 62 (2000).
*643 | ^Nevertheless, even if the State’s argument was improper, a conviction or sentence will not be reversed for improper closing argument unless the court is thoroughly convinced the remarks influenced the jury and contributed to the verdict. Taylor, 669 So.2d at 375. The Louisiana Supreme Court has recognized that “much credit should be accorded to the good sense and fairmindedness of jurors who have seen the evidence and heard the argument, and have been instructed repeatedly by the trial judge that arguments of counsel are not evidence.” State v. Mitchell, 94-2078 (La.5/21/96), 674 So.2d 250, 258, cert. denied, 519 U.S. 1043, 117 S.Ct. 614, 136 L.Ed.2d 538 (1996).
Generally, evidence of “other crimes” or bad acts committed by a criminal defendant is not admissible at trial. See La. C.E. art. 404(B)(1); State v. Prieur, 277 So.2d 126, 128 (La.1973). However, when evidence of “other crimes” tends to prove a material issue and has independent relevance other than to show that the defendant is of bad character, it may be admitted by certain statutory and jurisprudential exceptions to this rule. State v. Dauzart, 02-1187 (La.App. 5 Cir. 3/25/03), 844 So.2d 159, 165.
Evidence of “other crimes” may be allowed to prove intent, preparation, plan, identity, absence of mistake or accident, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding. La. C.E. art. 404(B)(1). Even when the “other crimes” evidence is offered for a purpose allowed under Article 404, the probative value of the extraneous evidence must outweigh its prejudicial effect. See La. C.E. art. 403; Jacobs, supra.
Absent an abuse of discretion, a trial court’s ruling on the admissibility of evidence pursuant to La. C.E. art. 404(B)(1) will not be disturbed. State v. Merritt, 04-204 (La.App. 5 Cir. 6/29/04), 877 So.2d 1079, 1085, writ denied, 04-1849 (La.11/24/04), 888 So.2d 228.
In the instant case, we find no error in the trial court’s ruling that the prosecutor’s reference to the stalking charge during closing argument did not warrant a mistrial. At-trial, during defense counsel’s cross-examination of Williams, he elicited testimony regarding defendant’s stalking charge.[16] Further, the State introduced evidence of Fink’s “permanent” protective order against defendant dated October 26, 2011, which listed the reason for the protective order as defendant’s criminal charge of stalking, in violation of La. R.S. 14:40.2. As such, defendant cannot show that the prosecutor’s comment prejudiced him since the jury had already heard evidence of it during trial. Based on the foregoing, we find no error in the trial court’s denial of defendant’s motion for mistrial.
Next, defendant argues pro se that the trial judge erred by allowing the State to admit “other crimes” evidence of his simple battery convictions in case number 10-1601. He indicates that this evidence was irrelevant and prejudicial.
At the Prieur hearing, the prosecutor argued that defendant and Fink had a long history together, as outlined in the Prieur notice, and that the State wanted to present a complete picture of their relationship. The prosecutor noted that the defendant was twice convicted of committing a simple battery upon Fink, which led *644 Fink to obtain protective orders against defendant, which showed that he was not permitted at her house. Defense counsel replied that any probative value of that evidence was substantially outweighed by the prejudicial effect. After hearing arguments of counsel, the trial judge ruled that evidence of the two batteries and other bad acts would be admissible at this trial.
In State v. Cotton, 07-782 (La.App. 5 Cir. 2/19/08), 980 So.2d 34, writ denied, 08-603 (La.10/3/08), 992 So.2d 1010, the defendant was charged with unauthorized entry of an inhabited dwelling. The trial court allowed the State to introduce evidence of four bad acts committed by the defendant, wherein the defendant had slapped the victim, threatened the victim with a gun, hit the victim, and threatened the victim’s life.
|21On appeal, the defendant argued that the trial court erred by admitting evidence of “other crimes.” This Court found no error in the trial court’s ruling, noting that the “other crimes” evidence was substantially relevant for the purpose of showing the defendant’s motive for entering the victim’s apartment without her permission, i.e., because of their troubled relationship and its subsequent dissolution, the defendant pursued the victim then threatened or physically abused her. Id., at 40-44.
This Court in Cotton, supra, further found that the State could not have placed the circumstances of the offense in their proper context without reference to the nature of the relationship existing between the victim and the defendant, and without that evidence, the jury would have lacked the context to evaluate the victim’s testimony about an isolated incident of the defendant being in the victim’s apartment. This Court stated that the primary purpose of this evidence was not to prove the defendant’s bad character, but to illustrate the volatile nature of the defendant’s relationship with the victim. Id.[17]
Here, we find that the trial judge did not err by admitting evidence of the simple batteries defendant committed upon Fink or the resultant protective orders Fink obtained against defendant. The evidence established that defendant harbored ill will towards the victim after their troubled relationship and its subsequent dissolution, which led him to fraudulently obtain a protective order against her then enter her home and sell her belongings without her permission. Without the evidence of the couple’s tumultuous history, the jury would have lacked the context in which to evaluate the victim’s testimony. See State v. Cotton, supra. These arguments lack merit.
|⅞“Motion for Unconflicted Effective Counsel ”
In this pro se assignment of error, defendant also asserts that the trial judge erred by denying his pre-trial “Motion for Unconflicted Effective Counsel.” He contends that his trial counsel was conflicted because defendant had filed at least four civil actions against him before trial began for ineffective assistance of counsel.
*645 The record reflects that, on August 24, 2012, defendant filed a “Motion for Uncon-flicted Effective Counsel,” basically claiming that his trial counsel was not obtaining certain evidence that would prove his innocence. On September 28, 2012, the trial judge denied defendant’s motion, finding that the public defender was professional and knowledgeable and his work was exemplary and thorough.
Additionally, our review reveals that defendant’s trial counsel did obtain the evidence mentioned by defendant, which is contained in the appellate record. Therefore, we find no error in the trial judge’s denial of defendant’s motion.

Motion for New Trial

In this pro se assignment of error,[18] defendant argues that the trial judge erred in denying his counseled and pro se motions for new trial.
On January 29, 2013, defendant filed a pro se motion for new trial, listing 57 reasons that his trial counsel was ineffective. Defendant’s pro se motion was denied without a hearing on February 1, 2013. That same day, defendant’s trial counsel filed a motion for new trial on two bases: (1) the verdict was contrary to the law and evidence, and (2) several rulings constituted reversible error, including (a) the trial judge’s denial of defendant’s request for a mistrial after the State made reference in closing argument to a stalking charge which had been excluded from trial; (b) the trial judge’s errors during voir dire regarding Gautreaux, Coulon, and Washington; (c) the trial judge’s allowing a temporary protective order dated November 14, 2011, and a bail restriction dated October | ⅞¾26, 2011, to be brought into the jury room during deliberations; (d) the trial judge’s admission into evidence of the two alleged batteries upon Fink; (e) the trial judge’s admission into evidence of photographs depicting a Jefferson Parish inmate handbook; (f) the trial judge’s refusal to allow defendant to question Fink regarding her Ford Explorer; and (g) the trial judge’s admission into evidence of temporary protective orders obtained by Fink against defendant. On February 19, 2013, after a hearing, the trial judge denied the motion without providing reasons.
La.C.Cr.P. art. 851 provides in pertinent part:
The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded.
The court, on motion of the defendant, shall grant a new trial whenever:
(1) The verdict is contrary to the law and the evidence;
(2) The court’s ruling on a written motion, or an objection made during the proceedings, shows prejudicial error[.]
The denial of a motion for new trial is not subject to appellate review, except for an error of law. La.C.Cr.P. art. 858. Further, the ruling on a motion for new trial is committed to the sound discre-' tion of the trial judge and will not be disturbed on appeal absent a clear showing of abuse of that discretion. State v. Gerard, 96-366 (La.App. 5 Cir. 11/14/96), 685 So.2d 253, 260. The merits of a motion for new trial must be viewed with extreme caution in the interest of preserving the finality of judgments. State v. Rodriguez, 02-334 (La.App. 5 Cir. 1/14/03), 839 So.2d 106, 133, writ denied, 03-482 (La.5/30/03), 845 So.2d 1061, cert. denied, 540 U.S. 972, 124 S.Ct. 444, 157 L.Ed.2d 321 (2003).
*646 In the instant case, defendant argues that the trial judge erred in denying his pro se motion for new trial based on ineffective assistance of counsel. However, an alleged error that is within the ambit of trial strategy does not establish ineffective assistance of 1¡.¿counsel because “opinions may differ on the advisability of such a tactic.” Brooks, supra. Finding that defendant has not established ineffective assistance of trial counsel, we find that the trial judge did not err in denying defendant’s pro se motion for new trial.
Next, defendant also argues that the trial judge erred by denying defense counsel’s motion for new trial on the basis that the verdict was contrary to the law and the evidence. This Court has recognized that a denial of a motion for new trial based on the verdict being contrary to the law and the evidence is not subject to review on appeal. State v. Bazley, 09-358 (La.App. 5 Cir. 1/11/11), 60 So.3d 7, 19, writ denied, 11-282 (La.6/17/11), 63 So.3d 1039. Accordingly, this assignment lacks merit.

Sentencing Errors

Multiple Offender Proceedings

By these assignments of error,[19] defendant challenges his multiple offender adjudication. Initially, defendant argues that the trial judge erred by denying his motion to quash the multiple bill because his predicate offense cannot be used to enhance his underlying conviction because he was not represented by counsel at the trial that resulted in the predicate conviction. The State responds that this issue is not properly before this Court because defendant filed an objection but not a motion to quash the multiple offender bill of information in the record.
In this case, the State filed a multiple offender bill of information on January 28, 2013 alleging that defendant was a second felony offender. In that multiple bill, the State alleged that defendant had been previously convicted on June 28, 2000, of two counts of attempted extortion, in violation of La. R.S. 14:27 and La. R.S. 14:66 in case number 96-4842 of the 24th Judicial District Court, and sentenced on July 5, 2000, to serve three years and ten months, suspended.
[gfjOn February 19, 2013, defendant filed a pro se “response and objection” to the multiple offender bill of information, stating that he had not been provided discovery, that the predicate convictions were obtained in violation of the Louisiana Constitution of 1974 and the U.S. Constitution, that he was not advised of his constitutional rights in connection with the predicate conviction, and that he was not advised of the future applicability of the multiple bill statute.
Although we agree that defendant did not file a motion to quash the multiple offender bill of information, we find that his pro se “response and objection,” although improperly styled, raised the issues that would have properly been raised in a motion to quash. Those issues were presented to and effectively denied by the trial court, which presents this Court with a ruling to review. U.R.C.A. 1-3.
Thus, we turn to defendant’s contention that his predicate offense cannot be used to enhance his underlying conviction because he was not represented by counsel at the trial that resulted in the predicate conviction. La. R.S. 15:529.1 re *647 quires tKe State to prove an accused’s prior felony conviction as well as his identity. See State v. Curtis, 338 So.2d 662, 664-65 (La.1976); State v. Dugas, 170 La. 5, 127 So. 345 (1930). Where defendant was convicted by a jury, the State can use that conviction as proof of a prior felony conviction to enhance defendant’s underlying conviction.[20] This argument lacks merit.
Next, defendant argues pro se that the State failed to prove his identity, i.e., that he was the same person that was previously convicted of attempted extortion because the fingerprints of the defendant convicted of attempted extortion were not attached to the bill of information for those charges.
lajOnce the State establishes a pri- or felony conviction, then it must offer proof that the accused is the same person who was convicted of the prior felony. State v. Hill, 332 So.2d 475 (La.1976); State v. Montana, 332 So.2d 248 (La.1976); State v. Maduell, 326 So.2d 820 (La.1976). While La. R.S. 15:529.1 permits the establishment of prima facie proof of a prior felony conviction by compliance with subsection (F),[21] necessary facts that permit enhanced punishment may also or instead be proved by other competent evidence, including the testimony of witnesses, expert opinion as to the fingerprints of the accused when compared with those in the prison record introduced, or photographs contained in the duly authenticated record. Id.
This Court has held that testimony comparing a defendant’s current fingerprints with fingerprints found on prior arrest records is sufficient to prove that the defendant is the person convicted of a prior felony. State v. Bell, 97-1134 (La.App. 5 Cir. 2/25/98), 709 So.2d 921, 926, writ denied, 98-792 (La.9/16/98), 721 So.2d 477. This Court has also found sufficient linkage to a defendant where the State connects the fingerprint card to the arrest register and/or the bill of information by matching police item numbers, Bureau of Identification numbers, social security numbers, addresses, employers, or docket numbers. State v. Muhammad, 03-419 (La.App. 5 Cir. 6/29/04), 880 So.2d 29, 33, writ denied, 04-2082 (La.1/7/05), 891 So.2d 669.
In this case, at the multiple bill hearing, the State presented the testimony of its expert latent fingerprint examiner, who testified that defendant’s fingerprints taken on the day of the multiple bill hearing “matched” the fingerprints evident on a penitentiary packet connected to defendant’s predicate conviction. Additionally, the State introduced further evidence of defendant’s predicate conviction including the bill of information, a Commute entry *648 dated July 5, 2000 listing his suspended sentence, and a hard labor commitment dated April 9, 2001 reflecting the revocation of his probation in the predicate conviction.
Upon review of the record, we conclude that the State adequately established defendant’s identity, for the purpose of La. R.S. 15:529.1, as the same person that had been previously convicted of attempted extortion. Hence, the trial judge correctly found that defendant was a second felony offender.
Lastly, defendant pro se contends that the multiple bill hearing was “untimely” because it occurred after his pro se motion for appeal was filed and granted. It appears that defendant is arguing that the trial judge lacked jurisdiction to hold a hearing on the multiple offender bill of information. Initially, we note that this argument cannot be raised for the first time on appeal where defendant failed to raise this issue in the trial court. La. C.Cr.P. art. 841. Further, a trial court retains authority to adjudicate and sentence a defendant as a multiple offender after an order of appeal has been entered. La.C.Cr.P. art. 916(8).
Based on the foregoing, we find that defendant’s assignments of error attacking his multiple offender adjudication lack merit.
Excessiveness[22]
In his pro se assignment of error, defendant argues that the ten-year sentence on the underlying simple burglary conviction was excessive. We note that defendant’s sentence on his underlying conviction was vacated prior to the enhanced sentence being imposed. Therefore, any argument relative to the underlying sentence is moot. See State v. Hanson, 00-1168 (La.App. 5 Cir. 12/13/00), 778 So.2d 43, 45.
Next, defendant argues that his twenty-year enhanced sentence was constitutionally excessive. He specifically contends that his sentence was imposed before 128the trial judge became aware that the victim’s testimony was not credible. Finally, defendant asserts that the record does not support the sentence imposed.
The State responds that the trial judge did not abuse his discretion in imposing the enhanced sentence because the victim testified before this judge in numerous pre-trial hearings, at trial, and through her victim,impact statement about defendant’s actions that caused her and her children severe distress.
The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. Although a sentence is within statutory limits, it can be reviewed for constitutional excessiveness. State v. Smith, 01-2574 (La.1/14/03), 839 So.2d 1, 4. A sentence is considered excessive if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering. Id. A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. State v. Lawson, 04-334 (La.App. 5 Cir. 9/28/04), 885 So.2d 618, 622.
,A trial judge has broad discretion when imposing a sentence and a reviewing court may not set a sentence aside absent a manifest abuse of discretion. The issue on appeal is whether the trial *649 court abused its discretion, not whether another sentence might have been more appropriate. State v. Dorsey, 07-67 (La.App. 5 Cir. 5/29/07), 960 So.2d 1127, 1130. The appellate court shall not set aside a sentence for excessiveness if the record supports the sentence imposed. State v. Pearson, 07-332 (La.App. 5 Cir. 12/27/07), 975 So.2d 646, 656. In reviewing a trial court’s sentencing discretion, three factors are considered: 1) the nature of the crime, 2) the nature and .background of the offender, and 3) the sentence imposed for similar crimes by the same court and other courts. Id.
In the instant case, the trial judge found that the State proved that defendant was a second felony offender with a predicate conviction for attempted extortion, which is a crime of violence under La. R.S. 14:2(B)(25), and an underlying conviction for simple |R9burglary. As such, he was exposed to a sentencing range of six to twenty-four years. See La. R.S. 14:62(B); La. R.S. 15:529.1 A(l). Here, the trial judge imposed an enhanced sentence of twenty years imprisonment at hard labor without benefits of probation or suspension of sentence.
This Court has upheld similar sentences for similarly situated defendants. See State v. Barroso, 99-1297 (La.App. 5 Cir. 5/17/00), 762 So.2d 206, writ denied, 00-1744 (La.6/29/01), 794 So.2d 821, overruled on other grounds in State v. Williams, 00-1725 (La.11/28/01), 800 So.2d 790 (finding that twenty years was not excessive for a second felony offender convicted of two counts of simple, burglary); and State v. Jones, 537 So.2d 848 (La.App. 5 Cir.1989) (finding that fifteen years for a second offender convicted of simple burglary was not excessive).
Here, the record reflects that, while defendant was under order prohibiting him from contact with the victim, he fraudulently obtained a protective order against the victim to preclude her from entering her own house, then sold her and her children’s property from her house without her permission and pocketed the proceeds. In sum, we find that defendant’s twenty-year enhanced sentence is not constitutionally excessive. Based on the foregoing, we find no merit in these assignments.

Victim Impact Statement

In this pro se assignment,[23] defendant states that the victim impact statement that was read to the trial judge was not notarized and should not support a twenty-year sentence. Further, defendant argues that the victim could not have read that statement under oath without committing perjury so this Court should not even consider it.
Victim impact statements are authorized by La. R.S. 46:1844(K), which provides in pertinent part:
[[Image here]]
I sn(l)(b) The victim and victim’s family members shall have the right to make a written and oral victim impact statement as follows:
(i) Any written statement shall be made available to the state and the defendant and shall be made part of the record. The statement may be submitted by the district attorney upon request of the victim or designated family member....
(ii) The hearing at which an oral statement is provided to the court shall be subject to the limitations of relevance. The court may otherwise reasonably restrict the oral statement in order to maintain courtroom decorum ....
*650 (2) The statement of the victim or the victim’s family may:
(a) Identify the victim of the offense.
(b) Itemize any economic loss that has been or may be reasonably suffered by the victim as a result of the offense.
(c) Identify any physical injury suffered by the victim as a result of the offense, along with its seriousness and permanence.
(d) Describe any change in the victim’s personal welfare or familial relationships as a result of the offense.
(e) Identify any request for medical or counseling services needed by the victim or the victim’s family as a result of the offense.
(f) Contain any other information related to the impact of the offense upon the victim or the victim’s family that the trial court requires.
(g) Contain any other information that the victim or victim’s family wishes to share with the court regarding the overall effect of the crime upon the victim and the victim’s family.
According to La. R.S. 46:1844(K)(l)(b), the victim had the right to make a written and oral victim impact statement. Further, the prosecutor was authorized, at the victim’s request, to read the ^statement into the record to comply with La. R.S. 46:1844(K)(l)(b)(i). Additionally, the statement, which complied with La. R.S. 46:1844(K)(2)(a) through (g), was included in the record. As such, the trial judge did not err in considering the statement before imposing defendant’s enhanced sentence. This argument lacks merit.
| S1Restitution[24]
In these assignments, defendant argues that the trial judge erred by awarding $5,000.00 in restitution to Fink without specifying the items for which she was being compensated. He also argues that the trial court erred by denying his request to hold a subsequent restitution hearing in the event his conviction was “upheld.” Next, defendant contends that the trial court erred by denying his motion to continue questioning the victim as to the restitution sought. Lastly, he asserts that the restitution hearing, was untimely because it occurred after his pro se motion for appeal was filed and granted.
In this case, after defendant was sentenced as a second felony offender, the State filed a motion to reconsider sentence based on La.C.Cr.P. art. 883.2 and La. R.S. 46:1844(M), to determine whether the victim sustained an actual pecuniary loss mandating restitution.
On June 28, 2013, the trial judge held the restitution hearing. Fink testified that, when she first walked into her home after defendant’s garage sale, she noticed that the flooring in parts of her house had been removed. Further, a television, entertainment center, and desk were missing.- She. believed defendant either sold the items or put them in his storage unit. Further, during the course of this case, Fink provided the State with a list of items that were in her home before defendant locked her out of her house, but missing from her home after his garage sale. She also supplied receipts for those items. The State introduced a list of items and corresponding receipts that totaled $12,508.41.
*651 Defendant, himself, then cross-examined Fink and presented testimony from his cousin, Natalie Bright, who previously operated and managed the facility where defendant had a storage unit. She testified that at least three items that Fink claims were stolen from her were not her property but rather were defendant’s property. After | ^considering the testimony and evidence, the trial judge held that Fink was entitled to $5,000.00 in restitution.

Restitution Amount

Defendant argues that the amount of restitution awarded is excessive.
 La.C.Cr.P. art. 883.2 provides in pertinent part:
A. In all cases in which the court finds an actual pecuniary loss to a victim, or in any case where the court finds that costs have been incurred by the victim in connection with a criminal prosecution, the trial court shall order the defendant to provide restitution to the victim as a part of any sentence that the court shall impose.
La. R.S. 46:1844(M) provides in pertinent part:
(1) If the defendant is found guilty, the court or parole committee shall require the defendant to pay restitution to the appropriate party in an amount and manner determined by the court. In addition, the court or parole committee may require the defendant to perform community service work in an amount and according to a schedule determined by the court.
In ordering restitution, the trial judge has discretion and his decision will not be disturbed absent an abuse of this discretion. State v. Blanchard, 03-612 (La.App. 5 Cir. 11/12/03), 861 So.2d 657, 668. The owner of stolen property may testify regarding the value of the stolen items without the necessity of being qualified as an expert, and such testimony “can constitute ample evidence of the property’s value.” State v. Davis, 569 So.2d 131, 135 (La.App. 5 Cir.1990).
In the instant case, the victim presented receipts showing $12,508.41 in losses, and although she did not have receipts for some of the items, she testified that defendant also stole property worth $21,699.80, for a total of $34,208.21. The amount of restitution ordered by the trial judge represents a very small portion of the victim’s estimate.
Restitution cannot always be determined with exactitude, and for that reason, trial judges are given discretion in determining the amount of restitution appropriate under the particular circumstances of a given case. State v. McDonald, 33,356 (La.App. 2 Cir. 6/21/00), 766 So.2d 591, 594-595 ($15,000.00 in restitution was not an abuse of Indiscretion where victim could prove at least $6,850.00 but loss could be as high as $200,000.00). We find no abuse of the trial court’s discretion in setting the amount of restitution in this case.

Request to Testify

Defendant argues that the trial court erred by denying his request to hold a second restitution hearing in the event that defendant’s conviction is upheld. Because we are affirming defendant’s conviction, we will address this argument. After reviewing the record, we find no error in the trial judge’s denial of defendant’s request to hold a second restitution hearing.

Motion to Continue Questioning

Next, defendant argues that the trial judge erred by denying his motion to continue questioning the victim as to the restitution sought. The record reflects that defendant himself cross-examined the victim regarding restitution. The record *652 further reflects that the trial judge allowed defendant to question Fink regarding many of the 94 items on the list. However, after defendant’s lengthy, contentious, and extensive cross-examination, the trial judge limited the questioning. Upon review, we find no error in that ruling.

Timeliness of Restitution Hearing

Finally, defendant argues that the restitution hearing was untimely because it occurred after his pro se motion for appeal was filed and granted.
La.C.Cr.P. art. 881.1(A)(1) provides, in pertinent part, that “In felony cases, within thirty days following the imposition of sentence ..., the state ... may make or file a motion to reconsider sentence^]” Further, La.C.Cr.P. art. 916(3) provides in pertinent part that, “The jurisdiction of the trial court is divested ... upon the entering of the order of appeal ... except ... to ... take any other appropriate action pursuant to a properly made or filed motion to reconsider sentence[.]”
laJn the instant case, the State’s motion to reconsider sentence seeking restitution was filed the day after defendant’s enhanced sentence was imposed. Thus, the trial court had jurisdiction to take appropriate action on the State’s motion to reconsider sentence and hold a restitution hearing as required by law. Accordingly, we find no merit in defendant’s argument.

Ineffective Assistance of Counsel

Trial counsel

By these pro se assignments of error,[25] defendant challenges the effectiveness of his trial counsel. Here, defendant argues first that his trial counsel was ineffective for failing to object to the prosecutor’s references to “this simple burglary as ‘domestic violence.’ ” Next, defendant argues that his trial counsel was ineffective for taking too much time to obtain exculpatory evidence that proved that the victim perjured herself during her testimony at his simple battery and simple burglary trials.
The Sixth Amendment to the United States Constitution and Article I, § 13 of the Louisiana Constitution safeguard a defendant’s right to effective assistance of trial counsel. In Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the United States Supreme Court held that a defendant asserting an ineffective assistance claim must show that defense counsel’s performance was deficient and that the deficiency prejudiced the defendant.
To establish ineffective assistance of counsel, the defendant has the burden of showing that “there is a reasonable probability that, but for counsel’s unprofessional errors, the results of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.” Strickland, 466 U.S. at 694, 104 S.Ct. at 2068. It is unnecessary to address the issues of both counsel’s performance and prejudice to the defendant if the defendant makes an inadequate ^showing on either one of the components. State in the Interest of C.M., 13-128 (La.App. 5 Cir. 10/30/13), 128 So.3d 1118, 1131, writ denied, 13-2796 (La.5/30/14), 140 So.3d 1172.

Domestic Violence References

Defendant argues that his trial counsel was ineffective for failing to object to the prosecutor’s references to domestic violence during his simple burglary trial.
*653 We note, however, that the trial court had already ruled during the Prieur hearing, over defense objections, that evidence of defendant’s simple batteries on the victim was admissible at trial; thus, there was no basis for an objection at trial. Defendant has failed to show that his trial counsel’s performance was deficient and cannot establish ineffective assistance of counsel on this issue.

Obtaining Evidence

Defendant also argues that his trial counsel was ineffective for taking three years to obtain certain evidence which proved the victim was lying and that she committed perjury during his simple battery and simple burglary convictions.
An alleged error that falls within the ambit of trial strategy does not establish ineffective assistance of counsel, because “opinions may differ on the advisability of such -a tactic.” Therefore, “hindsight is not the proper perspective for judging the competence of counsel’s trial decisions. Neither may an attorney’s level of representation be determined by whether a particular strategy is successful.” State v. Brooks, 505 So.2d 714, 724 (La.1987), cert. denied, 484 U.S. 947, 108 S.Ct. 337, 98 L.Ed.2d 363 (1987) (citing Strickland v. Washington, supra). If an alleged error is part of counsel’s trial strategy, it does not establish ineffective assistance of counsel. State v. Esteen, 02-1241, p. 8 (La.App. 5 Cir. 4/29/03), 846 So.2d 167, 174, writ denied, 03-1486 (La.1/9/04), 862 So.2d 978. Finding that defense counsel’s decision fell within the ambit of trial strategy, we find that defendant failed to establish deficiency and, thus, ineffectiveness.
| ⅞^Appellate counsel
In this pro se assignment of error,[26] defendant states that his appellate counsel appointed by the State was so ineffective that he was forced to file four supplemental briefs.
An attorney need not advance every argument, regardless of merit, urged by appellant. State ex rel. Cockerham v. Butler, 515 So.2d 1134, 1138 (La.App. 5 Cir. 11/9/1987) (citing Evitts v. Lucey, 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985)). Experienced advocates have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue, if possible, or at most, on a few key issues. Jones v. Barnes, 463 U.S. 745, 751-52, 103 S.Ct. 3308, 3313, 77 L.Ed.2d 987 (1983).
The record reflects that defendant’s appellate counsel, who is with the Louisiana Appellate Project, filed a lengthy and thorough brief raising five well-briefed assignments of error. Defendant has not made the requisite showing of deficiency to establish a claim of ineffective assistance of counsel in this regard. This argument lacks merit.

ERROR PATENT DISCUSSION

We have reviewed the record for errors patent, according to La. C.Cr.P. art. 920 and found three that require correction. Restitution
The trial judge failed to set a payment schedule for restitution. According to La.C.Cr.P. art. 895.1(A)(1), “[t]he restitution payment shall be made, in discretion of the court, either in a lump sum or in monthly installments based on the earning capacity and assets of the defendant.” In the instant case, the trial judge ordered defendant to pay $5,000.00 in restitution to the victim but did not determine the manner in which restitution should be paid. As such, we remand for the trial judge to *654 determine the |S7manner in which restitution should be paid, either in a lump sum or in monthly installments, in accordance with La.C.Cr.P. art. 895.1(A)(1). See State v. Alexander, 97-1199 (La.App. 5 Cir. 9/29/98), 720 So.2d 82, 88, writ denied, 98-3109 (La.4/9/99), 740 So.2d 628.

Post-Conviction Relief Advisal

The transcript reflects that the trial judge advised defendant at the original sentencing hearing on March 1, 2013, that he had two years after his sentence became final to file an application for post-conviction relief. The transcript also reflects that the trial judge advised defendant at the enhanced sentencing hearing on March 25, 2013, that he had “two years in which to seek post conviction relief.”
This Court has held that the failure to advise a defendant that the prescriptive period runs from the time his conviction and sentence become final is incomplete. State v. Grant, 04-341 (La.App. 5 Cir. 10/26/04), 887 So.2d 596, 598 (emphasis as found in original). Accordingly, we advise defendant, by way of this opinion, that no application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of La. C.Cr.P. arts. 914 or 922. See State v. Ruffin, 13-393 (La.App. 5 Cir. 12/12/13), 131 So.3d 330, 342, writ denied, 14-66 (La.6/13/14), 140 So.3d 1194.

Uniform, Commitment Order

The State of Louisiana Uniform Commitment Order reflects that the date of offense was December 9, 2011; however, the bill of information and the evidence at trial reflect that the date of offense was actually on or between November 14, 2011 and December 9, 2011. As such, we remand the matter and order the district court to correct the Uniform Commitment Order to reflect the correct date range and direct the Clerk of Court to transmit the original of the Uniform Commitment Order to the officer in charge |asof the institution to which defendant has been sentenced and the Department of Correction’s Legal Department. See La.C.Cr.P. art. 892(B)(2); State ex rel. Roland v. State, 06-244 (La.9/15/06), 937 So.2d 846 (per curiam); State v. Long, 12-184 (La.App. 5 Cir. 12/11/12), 106 So.3d 1136, 1142.
In all other respects, defendant’s conviction and enhanced sentence are affirmed. This matter is remanded for compliance with La.C.Cr.P. art. 892(B)(2) and La. C.Cr.P. art. 895.1(A)(1).

AFFIRMED; REMANDED FOR CORRECTION OF THE COMMITMENT AND SETTING OF RESTITUTION SCHEDULE.

. See Errors Patent, infra.

. It is undisputed that defendant did not contribute funds toward the purchase of the house.

. On March 26, 2010, the Jefferson Parish District Attorney, in case number 10-1601, charged defendant with two counts of simple battery, in violation of La. R.S. 14:35. Regarding the first count of simple battery, defendant testified that, while on the premises of 509 Airline Park, he "pushed [Lea Fink]” in an "aggressive ... continuous, steady push” on July 11, 2009. Further, Lea Fink testified that, on July 11, 2009, defendant hit her “in the ... head over and over and over.” Regarding the second count of simple battery, Kayla Fink testified that she saw Vincent Castillo slap her mother, Lea Fink, in the face while they were arguing on September 10, 2009. On June 4, 2012, after a bench trial, the trial judge found defendant guilty as charged of two counts of simple battery and sentenced relator to six months in parish prison on each count, to run concurrently, with credit for time served. This Court affirmed defendant’s misdemeanor convictions for simple battery. State v. Castillo, 12-618 (La.App. 5 Cir. 12/7/12) (unpublished writ disposition).

. Pursuant to La. R.S. 46:2136(F)(2)(a), "any protective order granted by the court, which directs the defendant to refrain from abusing, harassing, or interfering with the person as provided in R.S. 46:2135(A)(1) may ... be [deemed] effective for an indefinite period of time ... on ... motion of the petitioner.”

. Toma Williams, an Assistant Jefferson Parish District Attorney in the Family Violence Unit, explained that a stay away order and a protective order are the same thing. Williams testified that to obtain a protective order, a complainant fills out a standard petition, which would be notarized. She further testified that when a petition is filed, no evidence is required, and that person would not have to show proof of ownership of a residence or vehicle or other assets. Further, although the trial judge did grant the initial protective order, the trial judge dismissed the petition at the December 5, 2011 hearing, thereby dissolving the protective order.

. This discussion addresses defendant’s sixth and twentieth pro se assignments of error.

. In his ninth pro se assignment of error, defendant argues that the trial judge erred by denying his motion for continuance to obtain evidence of the victim’s perjury. In his tenth pro se Assignment of Error, defendant contends that the trial judge erred in denying his written motion to obtain "this Craig’s List Account Information directly on line via the actual account.” In his eleventh pro se assignment of error, defendant merely states, "Also, Nataliafsic] Bright's testimony as well as Steve Lauridsen's refuted the alleged victim’s (Lea Fink, “Fink”) testimony and further proved her perjury.” As these assignments were not briefed, we consider them abandoned. See U.R.C.A. 2-12.4(B)(4); State v. Tranchant, 10-459 (La.App. 5 Cir. 11/23/10), 54 So.3d 730, 735, writ denied, 10-2821 (La.4/29/11), 62 So.3d 108 ("All specifications or assignments of error must be briefed, and the appellate court may consider as abandoned any specification or assignment of error that has not been briefed.”).

. We further note that defendant's seventh and twenty-second pro se assignments of error are moot. In them, defendant asks for a copy of the appellate "record and transcripts;” that he be allowed fifteen to thirty days to resubmit an appellate brief; and requests the appointment of counsel to brief his arguments. These assignments of error are moot. First, defendant was appointed appellate counsel, who filed a thorough, well-executed brief that raised 5 assignments of error. Further, on two separate occasions, this Court provided defendant, at no charge to him, a complete copy of the voluminous, appellate record in this case. Finally, defendant has filed 4 pro se supplemental briefs in this case. Again, these assignments are moot.

. This discussion refers to defendant’s second counseled assignment of error. .

. See La.C.Cr.P. art. 799.

. This discussion addresses defendant's third counseled assignment of error.

. La. R.S. 15:572(B)(1) reads, "A first offender never previously convicted of a felony shall be pardoned automatically upon completion of his sentence without a recommendation of the Board of Pardons and without action by the governor.” Further, ”[n]otwith-standing any provision of law to the contraiy, no pardon shall be issued to a first offender unless that person has paid all of the court costs which were imposed in connection with the conviction of the crime for which the pardon is to be issued.” La. R.S. 15:572(B)(3). Finally, "[a]fter satisfying itself that the individual is a first offender as defined herein and that the individual has completed his sentence, the Division of Probation and Parole of the Department of Corrections shall issue a certificate recognizing and proclaiming that the petitioner is fully pardoned for the offense, and that he has all rights of citizenship and franchise, and shall transmit a copy of the certificate to the individual and to the clerk of court in and for the parish where the conviction occurred.” La. R.S. 15:572(D).

. This discussion addresses defendant’s first counseled assignment of error.

. State v. Prieur, 277 So.2d 126, 128 (La.1973).

. La. R.S. 14:40.2 defines stalking as "the intentional and repeated following or harassing of another person that would cause a reasonable person to feel alarmed or to suffer emotional distress. Stalking shall include but not be limited to the intentional and repeated uninvited presence of the perpetrator at another person's home, ..., or any place which would cause a reasonable person to be alarmed, or to suffer emotional distress as a result of verbal or behaviorally implied threats of ... bodily injury, ... or any other statutory criminal act to himself or any member of his family or any person with whom he is acquainted.”

. Compare State v. Kimble, 375 So.2d 924, 928 (La.1979), wherein the Louisiana Supreme Court found that the State could not be charged with testimony elicited by defense counsel implying that the defendant had previously committed other crimes and that the defendant could not claim reversible error on the basis of that evidence which was elicited.

. See also State v. Walker, 394 So.2d 1181, 1184 (La.1981) ("Clearly, evidence that defendant and his ex-wife, the person to whom defendant's alleged criminal conduct was directed, had had a poor marital relationship and that defendant had a bad temper'was relevant as tending to show the commission of the offense [aggravated criminal damage to property] and the intent”); State v. Adams, 11-980 (La.App. 5 Cir. 4/24/12), 89 So.3d 435, 445, writ denied, 12-1629 (La.4/19/13), 111 So.3d 1027 (the defendant was charged with simple criminal damage to property and unauthorized entry of an inhabited dwelling, and this Court found that "other crimes” evidence was admissible to show motive and the volatile relationship between the defendant and the victim).

. This discussion addresses defendant’s twenty-first pro se assignment of error.

. This discussion addresses defendant’s fourth counseled and sixteenth and part of his nineteenth pro se assignments of error.

. When the State relies on a prior conviction that is based on a guilty plea to prove the defendant’s habitual offender status and the defendant denies the habitual offender bill, the State’s burden of proof is governed by State v. Shelton, 621 So.2d 769 (La.1993). Under Shelton, it is initially the State's burden to prove: 1) the existence of the prior guilty pleas and 2) that the defendant was represented by counsel when the pleas were taken. However, Shelton is inapplicable in this case, where the conviction was based on a jury's finding of guilt.

. La. R.S. 15:529.1(F) provides as follows: "The certificates of the warden ... of any penitentiary of this state, ... containing the name of the person imprisoned, the photograph, and the fingerprints of the person as they appear in the records of his office, a statement of the court in which a conviction was had, the date and time of sentence, length of time imprisoned, and date of discharge from prison or penitentiary, shall be prima facie evidence of the imprisonment and of the discharge of the person, either by a pardon or expiration of his sentence as the case may be under the conviction stated....”

. This discussion addresses defendant’s fifth counseled and twenty-third pro se assignments of error.

. This discussion addresses defendant’s eighteenth pro se assignment of error.

. This discussion addresses defendant’s twelfth;'thirteenth, fourteenth, and part of his nineteenth pro se assignments of error.

. This discussion addresses defendant's eighth and fifteenth pro se assignments of error.

. This discussion addresses defendant’s seventeenth pro se assignment of error.