980 So.2d 34 (2008)
STATE of Louisiana
v.
Ranji J. COTTON a/k/a Ronnie Hayes.
No. 07-KA-782.
Court of Appeal of Louisiana, Fifth Circuit.
February 19, 2008.
*36 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Anne Wallis, David Wolff, Assistant District Attorneys, Twenty-Fourth Judicial District, Parish of Jefferson, Gretna, LA, for Plaintiff/Appellee.
Bruce G. Whittaker, Louisiana Appellate Project, New Orleans, LA, for Defendant/Appellant.
Panel composed of Judges THOMAS F. DALEY, MARION F. EDWARDS, and WALTER J. ROTHSCHILD.
THOMAS F. DALEY, Judge.
Defendant, Ranji J. Cotton, appeals his conviction for unauthorized entry of an inhabited dwelling, a violation of LSA-R.S. 14:62.3. On appeal, he assigns the following errors of the trial court:
1. It was error to deny appellant's motion for mistrial premised upon the prosecutor's direct reference to appellant's anticipated exercise of his right to remain silent.
2. It was error to permit the State to present inadmissible evidence of "other crimes."

*37 3. Assigned as error are all errors patent.
For the following reasons, this Court finds no errors in the trial court proceedings, and affirms defendant's conviction.
FACTS
Katherine Matthews, defendant's ex-girlfriend, testified at trial that, on September 7, 2003, she arrived at her apartment in Gretna and discovered her door unlocked. When she walked inside, she observed defendant standing in her living room. After seeing him, she ran to a store on Lapalco and called 911 to report the incident. Three officers met Matthews at her apartment; however, defendant was already gone by that time. Matthews gave a statement to an officer regarding the incident. Matthews testified that defendant did not have her permission to be in her apartment that day.
Matthews explained that her relationship with defendant began in 2001, and that they resided together for a short while in Thibodaux. She also explained that defendant did not live with her in Thibodaux on an everyday basis, as he was working offshore and only stayed with her on the weekends. She did not recall when defendant moved out of the Thibodaux apartment.[1]
Deputy Gary Barteet of the Jefferson Parish Sheriff's Office (JPSO) testified at trial regarding this incident, and his testimony largely corroborated that of Matthews.
The State also introduced evidence of four "other crimes" that occurred both before and after the September 7, 2003 incident. The dates of these "other crimes" were October 8, 2002, when defendant allegedly slapped her while the two were driving in a car; May 17, 2003, when the defendant allegedly threatened Matthews with a gun at her workplace; August 10, 2003, when defendant allegedly appeared outside Matthews's apartment, hit her and stole her keys; and March 17, 2005, when defendant allegedly threatened Matthews's life if she testified in this matter.
Matthews explained that she continued to see defendant after the October 2002 incident, even though she was afraid of him, because she still loved him. She also explained that she maintained contact with defendant and tried to stay on his "good" side, because she thought if she did so he would not harm her. She admitted that she had convictions for forgery, issuing worthless checks, and shoplifting.
After the State rested its case, the defense called Kenneth Morton as a witness. Morton testified that, in February or March of 2005, he saw defendant and Matthews together twice at Boomtown Casino.
Gloria Hines, defendant's aunt, testified that, in August of 2003, defendant and Matthews purchased furniture from her for their apartment in the Summerfield apartment complex off of Manhattan where they were living together.
Kisha Heard, defendant's cousin, testified that between the end of 2003 and early 2004, defendant and Matthews were living with her.
Ruth Martin, defendant's grandmother, testified that, in February of 2005, Matthews called and asked to speak to defendant, but he was not there. She further testified that, in 2005 right after "Carnival," she was on her way home when she saw defendant and Matthews in a green car.
*38 Kathy Craig, Matthews' co-worker, testified that, in 2005 before Mardi Gras, she, defendant, and Matthews went to the French Quarter together and walked around.
Shirley Hayes, defendant's mother, testified that defendant and Matthews lived in Thibodaux from 2001 until early 2003, and that afterwards, defendant lived with Heard. She further testified that Matthews came to live on the Westbank at approximately the same time that defendant returned from Thibodaux. According to Hayes, defendant and Matthews lived together on Orange Blossom Drive in February or March of 2003. She indicated that defendant and Matthews continued to see each other off and on after they lived on Orange Blossom Drive, and she also saw them together in Matthew's car at her (Hayes') house in February of 2005.
Ronald Johnson, defendant's son, testified that Matthews called him in February of 2005 and asked him where defendant lived and whether defendant had a new girlfriend.
Matthews testified on rebuttal that she never lived with Heard, that she did not go to Boomtown Casino in February or March of 2005, and that she did not purchase furniture from Hines. She further testified that she had an apartment on Orange Blossom Drive in Harvey, and that defendant spent the night there. However, she stated that defendant did not live there, his name was not on the lease, and she did not give defendant a key to that apartment. Matthews insisted that defendant did not have permission to come and go as he pleased at any of her apartments.
The factual determination of guilt or innocence in this case turns largely on the credibility of the witnesses and whether the defendant had permission to be present in his ex-girlfriend's apartment.
ASSIGNMENT OF ERROR NUMBER ONE
Defendant argues that the trial court erred in denying his Motion for a Mistrial based upon the prosecutor's direct reference to his anticipated right to remain silent.
During voir dire, the prosecutor questioned the prospective jurors regarding whether they could convict a person based on the testimony of one witness and no physical evidence. Several of the prospective jurors indicated that it would be a problem, and much would depend on that witness's credibility. The prosecutor then stated:
Alright [sic]. Two issues that I think that are important came up during that last exchange. One I guess is the history of both the victim and the Defendant.
And let me tell you. Ordinarily in a case, a criminal trial, any witness  and when I say witness, anybody that [sic] testifies: Victim, Witness, Defendant, Police Officer, whatever  anybody that [sic] takes the stand can be asked about whether they had any prior convictions. They open themselves to that, okay. So any witness that takes the stand, you will learn if they've been convicted of anything previous [sic].
Other than that, generally you don't hear a person's background, and their prior bad acts or something like that. In certain cases, certain special cases a Jury will be allowed to hear about a person's criminal history  but only specific things. Like lets [sic] say I'm a Bank Robber. I'm on Trial for robbing a bank.
At that point, defense counsel objected to the prosecutor telling the jury that defendant would be subject to cross-examination regarding his criminal history if he testified. The trial judge stated:

*39 First of all, you cannot talk about the Defendant taking the stand. Y'all are getting close. You can't talk about the Defendant taking the stand. And I'm going to tell you this is [sic] regards to anything with regard to the Defendant taking the stand. The Defendant has a Constitutional Right not to. This is just like any other witness. Okay. It doesn't matter.
Afterwards, defense counsel moved for a mistrial, which the trial judge denied. The trial judge then told the prosecutor he could talk about anybody but the defendant. She also stated that she did not think the prosecutor's comment was "enough" to cause a mistrial. When the trial judge indicated that the jury could not consider the defendant at all, defense counsel said he would prefer that she not "even bring it up." The trial judge responded that she did not have to do "anything special," and defense counsel said he wanted her to just note his challenge.
Under LSA-C.Cr.P. art. 775,
[u]pon motion of a defendant, a mistrial shall be ordered, and in a jury case the jury dismissed when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial, or when authorized by Article 770 or 771.
LSA-C.Cr.P. art. 770 provides in pertinent part as follows:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
. . . .
(3) The failure of the defendant to testify in his own defense[.]
. . . .
An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial.
LSA-C.Cr.P. art. 771 provides the law regarding admonitions:
In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
(1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770; or
(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.
A mistrial is a drastic remedy and, except in instances in which a mistrial is mandatory, is warranted only when trial error results in substantial prejudice to defendant, depriving him of a reasonable expectation of a fair trial.[2] Whether a mistrial should be granted is within the *40 sound discretion of the trial court and the denial of a Motion for Mistrial will not be disturbed absent an abuse of that discretion.[3]
In the instant case, the prosecutor did not comment on defendant's failure to testify in his own defense. Thus, the remarks in question were not within the scope of LSA-C.Cr.P. art. 770 and, therefore, a mistrial was not mandatory. Defendant was only entitled to an admonition under LSA-C.Cr.P. art. 771, if one was requested. A review of the record shows that defense counsel did not request an admonition and, in fact, he told the trial judge that he would prefer if she not mention it. Additionally, it does not appear that the error resulted in substantial prejudice to defendant, depriving him of a reasonable expectation of a fair trial. The prosecutor included defendant in the group of persons whom could be cross-examined regarding their criminal histories. Defendant was not singled out, and the prospective jurors' attention was not focused solely on defendant when the statements were made. We find no error.
ASSIGNMENT OF ERROR NUMBER TWO
Defendant argues that the trial court erred by admitting evidence of "other crimes" because that evidence was much more prejudicial than probative. He notes that the "other crimes" alleged were more serious offenses than the charged offense, and that more witnesses, time, and testimony were presented on the "other crimes" evidence than on the crime of conviction. He asserts that proof of the "other crimes" was used solely to paint him as a bad man who should be punished, and that the error was not harmless, given the inoffensive nature of the charged offense, the lack of corroboration for that crime, and the questionable credibility of the victim due to her prior conviction for forgery.
On March 21, 2005, the State filed a Notice of Intent to use evidence of other crimes pursuant to State v. Prieur.[4] In that notice, the State sought to introduce evidence of "other crimes" that occurred on March 17, 2005, August 10, 2003, May 17, 2003, and October 8, 2002. It stated that the purpose of using the "other crimes" evidence was to show defendant's knowledge, intent, guilty knowledge, system, and motive.
On April 18, 2005, at the Prieur hearing, the trial judge remarked that the State had filed a motion pursuant to LSA-C.E. art. 404 B. The prosecutor introduced into evidence crime reports pertaining to the "other crimes," which the trial judge read. The prosecutor subsequently argued that defendant's threat on March 17, 2005 that he would kill the victim was admissible to show that defendant did not have the consent to enter the victim's home, and that defendant was motivated to make that threat because of the instant case. She contended that the probative value of that evidence was not substantially outweighed by the prejudicial effect.
Defense counsel responded that the probative value was outweighed by the prejudicial effect, and that the evidence of "other crimes" had nothing to do with the occurrence of the unauthorized entry. He argued that the State was trying to show that defendant was a "bad guy." He further asserted that the victim herself had contacted defendant on several occasions. He indicated that it was questionable whether the March 17th phone call occurred, since the victim did not contact the JPSO until the next day after being instructed *41 to do so by the district attorney's office.
After hearing arguments of counsel, the trial judge stated that the October 2002 incident was admissible as it "goes to motive, opportunity, intent, preparation, plan, knowledge and identity. . . ." The trial judge also ruled that the other incidents were admissible, but she did not provide reasons. Defense counsel noted his objection. Although defense counsel said he intended to take a writ, the record does not indicate that he did so.
At trial, the following evidence was presented regarding the "other crimes."
October 8, 2002
Matthews testified that, in October of 2002, defendant started pushing on her as she was driving him to his mother's house. He also slapped her once in the face. Matthews stopped the car at a store, went inside, and asked the clerk to call 911. She explained that defendant then came into the store behind her, but afterwards, he left the store, went outside, kicked her driver's side mirror off of her car, and ran away. Matthews subsequently gave a statement to an officer regarding that incident. She testified that, at the time of that incident, she and defendant were living together on the weekends in Thibodaux.
JPSO Deputy David Sanchez testified at trial regarding that incident, and his testimony largely corroborated that of Matthews.
May 17, 2003
Matthews testified that, on May 17, 2003, she was taking the trash out at her place of employment, the Nine Mile Spur, in Bridge City. When she got to the dumpster, she noticed defendant standing there. Matthews explained that defendant pointed a gun at her and told her, "`B, I will kill you.'" She said that a car then came into the parking lot, and defendant fled. Matthews went inside the store and called 911. She gave a statement to JPSO Deputy Larry Phoenix regarding the incident.
August 10, 2003
Matthews testified that, as she was leaving her apartment and locking the door, she observed defendant, her ex-boyfriend, standing there. Defendant wanted to go inside to talk, but she would not let him in. An argument ensued, and defendant grabbed her by the throat and hit her. Matthews testified that, when they started fighting, she dropped her keys. Defendant subsequently grabbed her keys and ran toward where his aunt lived.
JPSO Deputy Rainey Lyons testified at trial regarding that incident, and his testimony largely corroborated that of Matthews.
The State and the defense stipulated that if Detective Kinler were called to testify, he would testify that he and Deputy Banner met with Matthews and took a statement on August 29, 2003, and that Matthews at that time wished to drop the charges against defendant regarding the August 10, 2003 incident.
March 17, 2005
Matthews testified that, on March 17, 2005, defendant called her at work between 10:00 a.m. and 11:00 a.m., and told her that if she went to court the following Monday and testified against him in the instant case, he would kill her or have her killed. She got scared, hung up the phone, and went back to work. Matthews explained that she did not contact the JPSO immediately because she had a lot of work to do as a manager. The next day, she called the district attorney's office, who informed her about the upcoming trial in the instant case, of which she was unaware. That evening, she called the *42 JPSO, who came to her place of employment and took her statement.
JPSO Detective Sergeant John Drury testified at trial regarding that incident, and his testimony largely corroborated that of Matthews.
Generally, evidence of other crimes or bad acts committed by a criminal defendant is not admissible at trial.[5] However, when evidence of other crimes tends to prove a material issue and has independent relevance other than to show that the defendant is of bad character, it may be admitted by certain statutory and jurisprudential exceptions to this rule.[6] Evidence of other crimes is allowed to prove motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding to such an extent that the State could not accurately present its case without reference to the prior bad act.[7]
Evidence of other crimes or bad acts must directly address one of the narrow exceptions to the general rule against its admissibility. The prosecutor's practice of identifying all of the reasons why the other crimes evidence could be introduced to justify the reason for its introduction in specific cases hampers the administration of justice.
In order for other crimes evidence to be admitted under LSA-C.E. art. 404(B)(1), one of the factors enumerated in the article must be at issue, have some independent relevance, or be an element of the crime charged.[8] Further, the probative value of the extraneous evidence must outweigh its prejudicial effect.[9] The defendant bears the burden to show that he was prejudiced by the admission of the other crimes evidence.[10]
Clearly, evidence of other crimes or bad acts is prejudicial since all evidence that tends to make it more probable than not that an individual committed a criminal offense is necessarily prejudicial.[11] The underlying policy is not to prevent prejudice, since evidence of other crimes is always prejudicial, but to protect against unfair prejudice when the evidence is only marginally relevant to the determination of guilt of the charged crime.[12] Absent an abuse of discretion, a trial court's ruling on the admissibility of evidence pursuant to LSA-C.E. art 404(B)(1) will not be disturbed.[13]
Evidence of other crimes may be admissible if the evidence is relevant to show motive, i.e., to show that the defendant had a reason to commit the crime with which he is charged.[14] "`Motive is the cause or reason that moves the will *43 and induces action for a definite result.'"[15] "`Motive' evidence reveals the state of mind or emotion that influenced the defendant to desire the result of the charged crime."[16] For evidence of motive to be independently relevant, it must be factually peculiar to the victim and the charged crime.[17]
In State v. Walker,[18] the victim saw the defendant, her ex-husband, at a lounge while celebrating her recent engagement to another man. A short time later, the victim was awakened by a shotgun blast hitting her wall. The State attempted to elicit testimony from the victim as to defendant's motive by asking her whether she had any problems with the defendant during her marriage, and whether he beat her. The defendant's objection as to the first question was overruled, and his Motion for a Mistrial made after the second question was apparently denied. The defendant was convicted of aggravated criminal damage to property.
On appeal the Louisiana Supreme Court observed, "Clearly, evidence that defendant and his ex-wife, the person to whom defendant's alleged criminal conduct was directed, had had a poor marital relationship and that defendant had a bad temper was relevant as tending to show the commission of the offense. . . ."[19] The court also found that "the evidence [of the beatings] [was] substantially relevant for the purpose of showing defendant's motive for committing the crime charged, that is, because of the troubled marriage of the parties and its subsequent dissolution, defendant harbored ill will towards Ms. Normand which, upon defendant seeing his ex-wife celebrating her engagement to another man, led to his commission of the crime charged."[20] The court stated that the evidence tended to prove a material fact at issue, the nature of the prior relationship between the parties in regard to defendant's motive for committing the crime.
In State v. Welch,[21] the victim and others were watching a fireworks display when the defendant, the victim's ex-boyfriend, walked past them. A few minutes later, the defendant returned and punched the victim in the face, then pulled out a knife and cut her on the arm. During the trial and over the defendant's objection, the trial court allowed the victim to testify regarding previous threats the defendant had made to her and her fiancé. The defendant was convicted of second degree battery.
Citing Walker, the Supreme Court found that, "the state could not place the circumstances of the offense in their proper context without reference to the nature of the relationship existing between the victim and the defendant. Without that evidence . . . the jury would have lacked the context in which to evaluate the victim's testimony about what otherwise appeared to be a gratuitous attack by the defendant."[22] The Supreme Court further found that the threats were a reflection of the defendant's subjective emotional state and could explain his sudden attack on his victim. It *44 concluded that the primary purpose of the evidence was not to prove the defendant's bad character, but to illustrate the volatile nature of his relationship with the victim and his inability to put her behind him.[23]
In the instant case, we find no error in the trial court's grant of the State's Prieur motion. We find that evidence of defendant's hitting the victim while she was driving, following her into the store afterwards, then damaging her vehicle (October 2002); going to her place of employment, pointing a gun at her, and telling her he was going to kill her (May 2003); and going to her apartment, then hitting her while she was outside of her apartment because she would not let him go inside (August 2003) was substantially relevant for the purpose of showing his motive for entering the victim's apartment without her permission in September of 2003. The evidence shows that defendant harbored ill will towards the victim because of their troubled relationship and its subsequent dissolution, which led defendant to pursue the victim and either threaten or physically abuse her.
Additionally, as the Supreme Court found in Welch, the State could not have placed the circumstances of the offense in their proper context without reference to the nature of the relationship existing between the victim and defendant. And without that evidence the jury would have lacked the context in which to evaluate the victim's testimony about what otherwise would have appeared to be an isolated incident of defendant being in the victim's apartment. The primary purpose of the evidence was not to prove defendant's bad character, but to illustrate the volatile nature of his relationship with the victim.
A review of the record supports the conclusion that the probative value of the "other crimes" evidence outweighed its prejudicial effect. Further, it is noted that the trial judge gave the jury a limiting instruction regarding the "other crimes" evidence. The jury was instructed as follows:
Evidence that the defendant was proved to be in the commission of an offense other than the offense for which he is on trial is to be considered for a limited purpose. The sole purpose for which such evidence may be considered is when it tends to show the defendant's knowledge, plan, attempt, system, motive or opportunity.
Remember, that the accused is on trial only for the offense charged. You may not find him guilty of this offense because he may have committed some other offense.
In light of the foregoing, we find that the trial judge did not abuse her discretion in admitting the "other crimes" evidence.
ERROR PATENT DISCUSSION[24]
The review reveals one error patent in this case.
The transcript indicates that the trial judge ordered the enhanced sentence to be served without benefit of probation or suspension of sentence. However, the commitment reflects that the trial judge ordered the enhanced sentence to be served without benefit of parole, probation, or suspension of sentence. The transcript prevails.[25] Therefore, we remand and order *45 the trial court to correct the commitment to conform to the transcript.[26]
AFFIRMED; REMANDED.
NOTES
[1] Matthews testified that the relationship ended in May of 2003; however, in her statement dated September 7, 2003, she said that the relationship had ended one-and-a-half years prior.
[2] State v. Smith, 04-340, p. 5 (La.App. 5 Cir. 10/26/04), 888 So.2d 280, 285.
[3] Id.
[4] 277 So.2d 126 (La.1973).
[5] LSA-C.E. art. 404 B(1); State v. Prieur, 277 So.2d 126, 128 (La. 1973).
[6] State v. Dauzart, 02-1187, p. 8 (La.App. 5 Cir. 3/25/03), 844 So.2d 159, 165 (citation omitted).
[7] LSA-C.E. art. 404(B)(1); Id.
[8] State v. Jackson, 625 So.2d 146, 149 (La. 1993).
[9] LSA-C.E. art. 403.
[10] State v. Dauzart, 02-1187 at 9, 844 So.2d at 165-66.
[11] State v. Williams, 02-645, p. 16 (La.App. 5 Cir. 11/26/02), 833 So.2d 497, 507, writ denied, 02-3182 (La.4/25/03), 842 So.2d 398.
[12] Id.
[13] Id.
[14] State v. Sutfield, 354 So.2d 1334, 1336-37 (La.1978).
[15] State v. Abercrombie, 375 So.2d 1170, 1175 (La. 1979), cert. denied, 446 U.S. 935, 100 S.Ct. 2151, 64 L.Ed.2d 787 (1980).
[16] State v. McArthur, 97-2918, p. 3 (La. 10/20/98), 719 So.2d 1037, 1041 (citation omitted).
[17] State v. Lafleur, 398 So.2d 1074, 1080 (La. 1981).
[18] 394 So.2d 1181 (La.1981).
[19] Id. at 1184.
[20] Id.
[21] 615 So.2d 300 (La.1993).
[22] Id. at 302-03.
[23] Id. at 303.
[24] This Court routinely reviews the record for errors patent in accordance with LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La. 1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir. 1990).
[25] State v. Lynch, 441 So.2d 732, 734 (La. 1983).
[26] See State v. Gordon, 00-1013, p. 29 (La. App. 5 Cir. 11/27/01), 803 So.2d 131, 151, writs denied, 02-0362 (La.12/19/02), 833 So.2d 336 and 02-0209 (La.2/14/03), 836 So.2d 134.