STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT
19-221

STATE OF LOUISIANA

VERSUS

BRIAN ANTHONY PORTER

**********

ON WRIT OF CERTIORARI FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERIA, NO. 15-CR-417
HONORABLE SUZANNE M. DEMAHY, JUDGE

**********

JONATHAN W. PERRY
JUDGE

**********

Court composed of John D. Saunders, Billy H. Ezell, and Jonathan W. Perry, Judges.

REHEARING GRANTED;
WRIT GRANTED AND MADE PEREMPTORY.

**M. Bofill Duhé**
**District Attorney**
**Nicole Burke**
**W. Claire Howington**
**Assistant District Attorneys**
**Louisiana, 16th Judicial**
**District Attorney's Office**
**300 Iberia St., Ste. 200**
**New Iberia, LA 70560**
**(337) 369-4420**
**Counsel for Applicant:**
      **State of Louisiana**

**Amanda Cannon**
**Hazel Coleman-Chavis**
**Attorneys at Law**
**16th JDC Public Defenders Office**
**215 West Saint Peter Street**
**New Iberia, LA 70560**
**(337) 365-4006**
**Counsel for Respondent:**
      **Brian Anthony Porter**

**PERRY, Judge.**

In this second degree murder case against Brian Anthony Porter (Defendant), the State of Louisiana (State) has applied for rehearing on this court's earlier denial of its writ application which sought review of the trial court's ruling on the admissibility of other crimes evidence under La.Code Evid. art. 412.4. In its earlier application, this court denied the writ as untimely. For reasons that follow, we grant rehearing, grant the State's writ application, and make it peremptory.

## PROCEDURAL HISTORY

Defendant and Penny Porter (Penny) were married on May 3, 2013. In the first year of their marriage, the police were dispatched to disturbances at the residence of Defendant and Penny on October 4, 2013, January 26, 2014, and April 17, 2014.[1] A bill of information, charging Defendant with domestic abuse battery for the October 4 incident was brought; however, the record does not show the disposition of that charge. A second bill of information charging Defendant with domestic abuse battery, first offense, and resisting arrest for the January 26 incident was filed; Defendant was convicted on November 12, 2014, on both charges. As to the April 17 incident, a third bill of information was filed against Defendant on May 15, 2014, charging Defendant with domestic abuse battery by strangulation and aggravated assault. At the time of Penny's stabbing death on December 12, 2014, at her residence, this third bill of information had not yet come to trial.

On April 15, 2015, a grand jury indicted Defendant for the second degree murder of his wife, Penny.[2] Shortly thereafter, the State filed notice of its intent to

---

[1] The circumstances of each disturbance will be detailed later in the opinion.

[2] Prior thereto, on April 7, 2015, the State filed a bill of information charging Defendant with one count of manslaughter, a violation La.R.S. 14:31. After the grand jury indicted Defendant with one count of second degree murder, the State dismissed the earlier filed manslaughter charge.

use other crimes evidence and moved for a pretrial determination of the admissibility of the same, citing to La.Code Evid. art. 404(B). Within days of that notice, the State amended its notice of intent to show it intended to submit the other crimes evidence under La.Code Evid. art. 412.4, specifically addressing evidence of similar crimes, wrongs, or acts in domestic abuse cases.

Over the course of two days of hearings on October 25, 2018, and November 19, 2018,[3] the trial court found the incident that occurred on October 4, 2013, was inadmissible. It also determined that the incident that occurred on January 26, 2014, would only be admissible to refute a claim of self-defense should Defendant make such an assertion. Finally, the trial court concluded that the incident that occurred on April 17, 2014, was admissible.

On March 21, 2019, the State filed a writ application with this court, seeking supervisory review of the trial court's ruling which determined the admissibility of other crimes evidence. After reviewing the State's writ application and all appended documents, this court denied the State's application as untimely filed. After referencing Uniform Rules—Courts of Appeal, Rule 4-3 which requires that any motion to extend the return date must be filed with the trial court within the original return date or one previously timely extended, we stated:

> The trial court set the original return date for January 18, 2019. The State filed its motion for an extended return date on February 15, 2019, which was nearly a month after [January 18, 2019], the original return date. The State's motion for an extended return date contained no explanation of why it was unable to timely seek an extension of the original return date. Additionally, the State neither alleged nor showed there were any additional motions for or grants of a return

---

[3] Although the grand jury indicted Defendant on April 15, 2015, and the State filed its motion seeking the use of other crimes evidence shortly thereafter, the hearing on this matter was delayed due to potential conflicts of representation between a former public defender and his subsequent employment with the district attorney's office. Ultimately, the Louisiana Supreme Court resolved this potential conflict, and this matter proceeded without the necessity of recusal on the part of the Sixteenth Judicial District Attorney's Office.

date extension.  Therefore, the State's writ application was untimely filed on its face.

The State then timely filed an application for rehearing.

## REHEARING

In its application for rehearing, the State claimed its writ application was timely filed and explained it had failed to attach an additional return date order which set February 18, 2019, as an interim return date.  The State then attached a copy of the previously missing return date order.  Our review of this order shows the following: (a) a handwritten notation, initialed by the trial court, striking through the original January 18, 2019, return date; and (b) a replacement return date of February 18, 2019, was set.  Although neither the trial court's initials nor the changed return date is dated, the ruling, stamped as having been filed on December 18, 2018, is well before the original return date.  Because the State filed its subsequent motion seeking an extended return date on February 15, 2019, prior to the February 18, 2019, return date, the trial court properly extended the return date to March 20, 2019.  Therefore, because the State's application for supervisory review was postmarked March 20, 2019, the new documentation shows the State timely filed its writ application with this court.

In instances such as this, where an original writ application has been denied as untimely based upon a lack of proper documentation and that documentation is subsequently provided in a timely filed application for rehearing, we find it proper to grant rehearing to address the merits of the State's claim.

## STATEMENT OF FACTS

As stated earlier, the State sought to admit evidence of three[4] previous incidents of domestic violence between Defendant and Penny in its prosecution of

---

[4] The State's motion originally sought inclusion of a fourth alleged incidence of domestic violence.  It alleged that on June 14, 2014, Defendant hit his wife in the mouth and pushed her out

3

Defendant for second degree murder. In support of its motion, the State presented the testimony of the investigating officers of each incident, as well as photographic evidence of Penny's injuries, and the transcript of Defendant's trial involving the incident of January 26, 2014.

Lance Laviolette (Mr. Laviolette) was the first witness to testify about the incident of October 4, 2013. Although no longer a police employee, Mr. Laviolette was an employee of the St. Martinville Police Department in October 2013. At that time, Penny, who was married to and living with Defendant on Denier Street in St. Martinville, came to the police department to pursue domestic violence charges against Defendant for the incident of October 4.[5] Mr. Laviolette took Penny's statement, photographed her injuries, and interviewed Defendant.

Penny stated that the argument between her and Defendant concerned Defendant's employment. As the argument ensued, Defendant pushed her into a dresser, creating bruises which were visible to Mr. Laviolette. At that time, Mr. Laviolette photographed the bruises on Penny, and those photographs were introduced into evidence [6]

Mr. Laviolette interviewed Defendant. The Defendant admitted he pushed Penny, but claimed she initiated the violence by hitting and slapping him first. Mr. Laviolette did not observe bruises on Defendant's body. Subsequently, Mr. Laviolette arrested Defendant for domestic abuse.

---

of the car. There is no mention of this contention either in the hearing or the trial court's ruling at the conclusion of the hearing. Accordingly, this incident is not before us.

[5] Officer Perry of the St. Martinville Police Department was the investigating officer who visited the scene of the incident. Although he generated the initial police report, he did not testify at the hearing on the State's motion.

[6] The State attached those photographs to its writ application. These photographs are grainy and in black and white; thus, the bruising is not discernible. Because the photographs focus on Penny's throat and neck, it appears that the bruises are located there.

The State next called Jordan Robeaux (Deputy Robeaux) to testify about the incident of January 26, 2014. At the time of the incident, Deputy Robeaux, now employed with the St. Johns Parish Sheriff's Office, worked with the Iberia Parish Sheriff's Office. On January 26, 2014, he was dispatched to Mike's Inn Hotel in New Iberia, where Penny and Defendant were living, because a female reported that her husband had attacked her.

Deputy Robeaux testified that he met Penny when he arrived; she was very upset and claimed her husband physically attacked her. He observed a red discoloration on the side of her neck along with fresh scratch marks. Shortly after law enforcement went to the location, Defendant became very irate, and a scuffle between Defendant and law enforcement ensued. Defendant was transported to the hospital because, after Defendant was handcuffed, he lost his footing on the way to the police unit and hit his face on the ground. Deputy Robeaux was unable to obtain a statement from Defendant at that time because Defendant was uncooperative. Ultimately, law enforcement arrested Defendant for domestic abuse battery, resisting an officer, and disturbing the peace by profanity. After conducting a trial, the trial court found Defendant guilty of domestic abuse battery, first offense, and resisting an officer. The State entered the misdemeanor trial transcript into evidence in support of its motion to present other crimes evidence at Defendant's second degree murder trial.

The State called Brandon Blood (Officer Blood), a police officer employed by the Broussard Police Department, as a witness, who was involved in the incident of April 17, 2014. On that date, Officer Blood was a patrolman working for the Iberia Parish Sheriff's Office. Officer Blood testified that, on April 17, 2014, 9-1-1 received a hang-up call. According to 9-1-1 protocol, Officer Blood was dispatched

5

to the address that originated the call, 100 West Santa Clara.[7] Officer Blood and his partner walked the area to determine if they could hear or see anything. They eventually heard a woman arguing through a closed door. They then listened for a while to determine whether everything was okay.

Officer Blood said that they heard a male making sexual advances while the woman started to say things like, "get off of me," and, "don't touch me." The officers knocked on the closed door for the purpose of preventing a physical altercation. Defendant and his wife opened the apartment door. Penny had bruises around her neck that were caused either by hands or by a rope. Penny also had marks on her legs, feet, and toes; one of her toes was cut. Officer Blood identified the photographs he took of Penny on April 17, 2014, and the State introduced those pictures into evidence.[8] Defendant was unmarked. After speaking with Defendant, Officer Blood arrested him for domestic abuse battery by strangulation and for aggravated assault. The aggravated assault arose because the officers found a knife in the bathroom.

Officer Blood identified State's Exhibit Number 4 as photographs of Defendant and the knife on the night of the altercation. The prosecution then introduced State's Exhibit Number 4 into evidence. State's Exhibit Number 4 consists of two photographs of a restroom and two photographs of Defendant.[9]

On cross-examination, Officer Blood said that Defendant denied that there was any problem when he answered the door and further denied injuring his wife.

---

[7] The record provides no more specificity on the Santa Clara address.

[8] Once again, the poor quality of the black and white photocopies makes it difficult to discern any details of the bruising, but State's Exhibit Number 3 clearly shows a cut along the length of Penny's second toe.

[9] The poor quality of the images prevents us from discerning the knife that was purportedly in the bathroom photos. Also, the grainy images prevent us from determining whether Defendant had any bruises or injuries to his head or neck, which are the only body parts visible in the second pair of photographs.

6

Nevertheless, Penny explained to Officer Blood that Defendant was responsible for her injuries and said Defendant had cut her toe with the knife.

Finally, the State called Deputy Joseph Carl Hardy (Deputy Hardy) to testify regarding Penny's murder on December 12, 2014, which is the incident for which Defendant is currently being prosecuted. On December 12, 2014, Deputy Hardy, who was employed with the Iberia Parish Sheriff's Office, Bureau of Investigation, Homicide Division, served as the lead detective in Penny's murder investigation. According to Deputy Hardy, Defendant drove to the St. Martinville Police Department, turned himself in, and confessed to killing his wife. After Defendant turned himself into police and confessed to the murder, law enforcement entered Defendant's home and found Penny deceased in the restroom of her residence; she had been stabbed to death.

> At the conclusion of the two evidentiary hearings, the trial court stated:
>
> [T]here is some issue with regards to potential relevance. So, with regards to the October 4, 2013[,] incident[,] which took place in St. Martin Parish, although there was allegations of domestic abuse, I do not feel that there was a showing that that allegation of 2013 is relevant to our instant matter of December 12, 2014. Any admission in that alleged offense would be highly prejudicial to the defendant, so it does not overcome the standard under 403.
>
> With regard[s] to the January 26, 2014[,] incident-what was he actually convicted of?
>
> MISS BURKE:
>
> He was convicted of Domestic Abuse Battery.
>
> . . . .
>
> It was a misdemeanor First.
>
> THE COURT:
>
> With regards to the January 26, 2014, if the defendant argues self-defense in this case, I think that the January 26, 2014[,] is admissible because it would be relevant to show the history between Miss Penny and Mr. Brian. . . .

7

. . . .

So, with regards to the 2014, at this time I'm going to have to table it, however, if at any point in time they bring up allegations of self-defense, that will be admissible.

. . . .

And if they argue something-so you won't be allowed to use it in the opening. I mean, she may bring up something that's in her opening statement. Once she opens the door, even if she brings it up in a cross examination, you will be allowed to use that conviction and the information.

With regards to the April 17, 2014[,] incident, because the allegation is of Aggravated Assault with a weapon, with a knife, and if I remember correctly, the instant offense is a stabbing in the restroom of the residence . . . .

. . . .

Therefore, I find that the incident from April 17, 2014[,] does have some relevance to our current offense, and although it's prejudicial to the defendant, I don't find its so prejudicial to him that it outweighs the standard, so I'm going to allow the incident from April 17, 2014[,] to be admitted at trial. Obvious[ly,] we will have some instructions for the jury, both pre-trial and before deliberations with regards to how they're supposed to consider that evidence.

## DISCUSSION

The State argues, "The trial court abused [its] discretion in limiting the admissibility of previous incidents of domestic violence between the parties under La.Code Evid. Art. 412.4." The prosecution also contends, "To the extent that the trial court ruled pursuant to La.Code Evid. Art. 404(B), the trial court abused [its] discretion in limiting the admissibility of previous incidents of domestic violence between the parties." The prosecution maintains all three of the prior incidents of domestic violence were admissible under both La.Code Evid. arts. 404(B) and 412.4 without waiting for the defense to open the door for their introduction. The State claims that all the other crimes evidence is relevant and that the probative value of the evidence outweighs any danger of unfair prejudice. The prosecution asserts that

all three of the prior offenses "are relevant to show the volatile nature of the defendant's relationship with [] Penny as well as the continuing nature and pattern of domestic violence."

"A district court's ruling on the admissibility of other crimes evidence will not be overturned absent an abuse of discretion." *State v. Taylor*, 16-1124, 16-1183, p. 18 (La. 12/1/16), 217 So.3d 283, 296. "[E]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected[.]" La.Code Evid. art. 103(A). "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." La.Code Evid. art. 401. "All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of Louisiana, this Code of Evidence, or other legislation. Evidence which is not relevant is not admissible." La.Code Evid. art. 402. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time." La.Code Evid. art. 403.

Unless its probative value is substantially outweighed by the danger of unfair prejudice, a defendant's prior violent behavior against a spouse is admissible in the trial for more recent abusive behavior against the same spouse. In that regard, La.Code Evid. art. 412.4 provides, in pertinent part:

> A. When an accused is charged with a crime involving abusive behavior against a family member, . . . evidence of the accused's commission of another crime, wrong, or act involving assaultive behavior against a family member, . . . may be admissible and may be considered for its bearing on any matter to which it is relevant, subject to the balancing test provided in Article 403.
>
> . . . .

9

C. This Article shall not be construed to limit the admissibility or consideration of evidence under any other rule.

D. For purposes of this Article:

(1) "Abusive behavior" means any behavior of the offender involving the use or threatened use of force against the person or property of a family member.

. . . .

(3) "Family member" means spouses, former spouses, parents and children, stepparents, stepchildren, foster parents, and foster children.

The prior assaultive acts, wrongs, and crimes are also admissible to prove motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident:

**Other crimes, wrongs, or acts.** (1) Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.

La.Code Evid. art. 404(B).

Other than cases discussing the *ex post facto* application of La.Code Evid. art. 412.4,[10] there is no published jurisprudence discussing the issue now before this court. Therefore, cases discussing other crimes under La.Code Evid. art. 404(B) provide the only guidance on the issue of relevance and on the balance sought between probative value and the danger of unfair prejudice.

---

[10] See *e.g.*, *State v. Smith*, 17-661 (La.App. 4 Cir. 1/10/18), 237 So.3d 29 (holding that the application of La.Code Evid. art. 412.4 was not violative of the *ex post facto* clause); *in accord*, *State v. Willis*, 05-218 (La.App. 3 Cir. 11/2/05), 915 So.2d 364 (holding that La.Code Evid. art. 412.2 did not constitute an *ex post facto* violation; its provisions did not alter the amount of proof required in the case as it merely pertained to the type of evidence which may be introduced).

In *State v. Mitchell*, 18-326, pp. 6-8 (La.App. 5 Cir. 12/27/18), 263 So.3d 967, 973, the fifth circuit held that, under La.Code Evid. art. 404(B), other incidents of domestic violence between the defendant and the victim were admissible to demonstrate their volatile relationship and to establish a pattern of domestic abuse and stated the following:

> This Court has consistently upheld the admission at trial of similar other crimes evidence. For example, in *State v. Adams*, 11-980 (La. App. 5 Cir. 4/24/12), 89 So.3d 435, 445, *writ denied*, 12-1629 (La. 4/19/13), 111 So.3d 1027, this Court found that the trial court did not err in allowing the admission of evidence of five instances of domestic abuse, battery, and threats involving the defendant and the victim, who had been involved in a romantic relationship, pursuant to La.C.E. art. 404(B)(1). This Court determined that the other crimes evidence was substantially relevant for showing the defendant's motive for the charged offenses. Further, this Court noted that the State could not have placed the circumstances of the offenses in their proper context without reference to the nature of the relationship existing between the victim and the defendant. In addition, this Court determined that the primary purpose of the evidence was not to prove the defendant's bad character but to illustrate the volatile nature of his relationship with the victim.

> In *State v. Marshall*, 13-233 (La. App. 5 Cir. 10/30/13), 128 So.3d 1156, 1161, this Court found that the defendant's prior acts of domestic abuse against the victim were independently relevant to show the volatile nature of their relationship as well as the defendant's motive. This Court further noted that the State could not place the circumstances of the offense in their proper context without reference to the nature of the relationship existing between the defendant and the victim. *See also State v. Granger*, 103 So.3d at 591-92, and *State v. Cotton*, 07-782 (La. App. 5 Cir. 2/19/08), 980 So.2d 34, 44, *writ denied*, 08-603 (La. 10/3/08), 992 So.2d 1010.

> Likewise, in the instant case, we find that the prior incidents of domestic abuse between defendant and the victim were highly relevant to show defendant's motive for committing the crime. Defendant himself indicated that he became angry over his belief that the victim was cheating on him. Further, his prior acts toward the victim placed the shooting on December 2, 2016, in its proper context and demonstrated to the jury the nature of the parties' relationship. Also, the purpose of the evidence was independently relevant to illustrate their volatile relationship and the pattern of abuse, and thus, the probative value outweighed the prejudicial effect. It is also noted that the trial judge gave a limiting instruction to the jury prior to its deliberation.

Based on the foregoing, we find no abuse of discretion in the trial court's admission of the prior incidents of domestic violence.

The Louisiana Supreme Court has likewise held prior incidents of domestic abuse between the defendant and the victim were admissible under La.Code Evid. art. 404(B) despite any remoteness of time:

> Logically, this [other crimes] evidence must have substantial relevance independent from showing defendant's general criminal character in that it tends to prove a material fact genuinely at issue. The trial court in its gatekeeping function determines the independent relevancy of such evidence and balances its probative value against its prejudicial effect. La.Code Evid. art. 403; *Huddleston v. United States*, 485 U.S. 681, 690-91, 108 S.Ct. 1496, 1502, 99 L.Ed.2d 771 (1988). "In this analysis, the court seeks to answer the question: Is this evidence so related to the crime on trial or a material issue or defense therein that, if admitted, its relevancy will outweigh the prejudicial effect, which the defendant will necessarily be burdened with?" [*State v.*] *Garcia*, 09-1578 at p. 55, [(La. 11/16/12),] 108 So.3d [1] at 39. Its answer to this question and corresponding ruling on the admissibility of the additional other crimes evidence will not be disturbed absent an abuse of discretion[.]

As evident from its written and oral reasons, the trial court herein denied the State's motions based on the remoteness of the various offenses to the charged offense. However, we have previously stated:

> The fact that the other acts or crimes happened some time before the offense for which the defendant is on trial is not sufficient, in and of itself, to require the exclusion of the evidence. Remoteness in time, in most cases, is only one factor to be considered when determining whether the probative value of the evidence outweighs its prejudicial effect. Generally, a lapse in time will go to the weight of the evidence, rather than to its admissibility.
>
> . . . .
>
> . . . [T]he time between the other crimes evidence and the offense charged is but one factor to be considered when balancing probative value, prejudicial effect, and relevancy. Length of time between the offenses should not exclude otherwise admissible evidence unless the lapse strips the testimony of probative value. While there must be some connexity between the crime charged and the other acts or crimes, the mere passage of time will not necessarily defeat admissibility.

*State v. Jackson*, 625 So.2d 146, 149-51 (La.1993). Accordingly, while we acknowledge the trial court's broad discretion in this regard, we find it abused its discretion by limiting its evaluation strictly to remoteness.

As *Garcia* noted, our jurisprudence has long held evidence of other crimes is admissible if the State establishes an independent and relevant reason for its admission. The State herein argues (1) the evidence of defendant's prior incidents has independent relevance to establish knowledge, identity, and absence of mistake or accident in connection with the present case; (2) the credibility of the victim and the defendant is a genuine issue to be contested at trial; and (3) the evidence rebuts and/or negates the defendant's contention the incident never occurred or alternatively, he was acting in self-defense.

In this regard, we note, in the November 1988 incident, defendant allegedly battered his pregnant wife and then attempted to take their child physically from her, threatening to kill her if she did not relinquish the child. According to the State, these allegations mirror the March 2010 incident in which defendant allegedly battered his wife and took their child from her. It argues these similarities, in turn, make the likelihood the March 2010 incident happened accidentally or never happened so remote as to rebut any such defenses as well as to negate any contention by the accused that he acted in self-defense. Furthermore, coupling the two incidents with the 1992 incident, the State posits there are three distinct allegations of domestic violence--two with prior wives and one with a child--all three resulting in the defendant taking or attempting to take his child from his victims, which further refute the defenses available to the defendant. Thus, the State's intent to introduce these prior offenses to establish[] defendant's pattern of domestic abuse goes directly to rebut defenses defendant may raise at trial and demonstrates their independent relevancy besides merely painting defendant as a bad person. It follows, therefore, the trial court should have considered the independent relevancy of this evidence, rather than outright excluding same based merely on remoteness.

Regarding the various messages and posts, the State argues defendant's statements carry the narrative momentum of his actions in the context of domestic violence. According to the State, the effects of defendant's coercive behavior as shown by his statements are part of one continuous transaction of domestic violence and should be viewed as a single and continuing entity, including, but not limited to, defendant's attempting to manipulate the victim's behavior by suggesting his own suicide and how that would affect the victim's daughter as well as threatening to cut off her phone. While these statements were apparently regarded as part and parcel of an ongoing divorce dispute by the trial court, we note the trial in the instant case involves domestic violence, psychological abuse, and coercive behavior, as allegedly exhibited by defendant on three separate occasions, which is an integral part of the continuing nature and pattern of domestic violence. *See Hernandez v. Ashcroft*, 345 F.3d 824, 836-

37 (9th Cir.2003)(discussing "cycle of violence" within abusive intimate relationships).

Moreover, contrary to the trial court's reasoning, the mere fact this criminal conduct occurred after the underlying offense does not preclude its admission or detract from its relevance in regards to the numerated exceptions of La.Code Evid. art. 404(B). Our most recent decision illustrating this principle is *State v. Lee*, 05-2098 (La.1/16/08), 976 So.2d 109, in which the State sought the death penalty for Charlotte Pace's murder that occurred on May 31, 2002, and relied heavily upon the attack on Diane Alexander that occurred on July 9, 2002, Pamela Kinamore's murder that occurred sometime between July 12-16, 2002, Trineisha Colomb's murder that occurred around November 21, 2002, and Carrie Yoder's murder that occurred sometime between March 3-13, 2003, to prove its case in the guilt phase of that capital murder trial. Therefore, the evidence of defendant's subsequent criminal conduct should likewise have been evaluated in light of the State's purpose for its admission and not excluded merely because of its temporal remoteness to the underlying offense.

Accordingly, we vacate the trial court's denial of the State's motions to introduce other crimes evidence. . . .

*State v. Altenberger*, 13-2518, pp. 8-11 (La. 4/11/14), 139 So.3d 510, 515-17 (footnotes omitted) (citations omitted).

In the present case, the State seeks to introduce evidence to show there were three incidents of domestic violence involving police intervention, those incidents were spaced approximately three months apart for a period of nine months, and these occurred less than eight months prior to Penny's murder.

The trial court rejected the first incident, which occurred on October 4, 2013, as being irrelevant. In relation to that offense, Penny complained Defendant pushed her into a dresser, and the evidence showed Defendant's actions included attempted strangulation because Penny's injuries involved bruises on her neck.

The trial court ruled the second incident would only be admissible to rebut any self-defense claim should Defendant raise that defense. The second reported offense occurred on January 26, 2014, and Penny's bruises and scratches to her neck were similar to those observed in the first offense. In addition, Defendant violently

14

resisted the officers who responded to the call. This incident resulted in Defendant's conviction for first offense domestic abuse battery on November 12, 2014, which was exactly one month prior to Penny's murder. At sentencing for that conviction, the State pointed out Defendant had two other domestic abuse charges pending; one was a felony and one was a misdemeanor, and both charges were also for allegations of violence against Penny. After consideration of the arguments of counsel, the sentencing court imposed a six-month suspended sentence with two years of supervised probation plus various fines and fees for the conviction.

The trial court ruled the third incident, which occurred on April 17, 2014, was admissible under La.Code Evid. art. 412.4. This was the time when officers overheard what was going on, including an attempted sexual battery or rape. Penny again sustained bruising around her neck, and Penny also alleged Defendant stabbed her foot, and contended that her cut toe supported her allegation. The involvement of the knife seemed to be the tipping point for the trial court in its determination that the April 17, 2014, offense was more probative than unfairly prejudicial.

We find the trial court's ruling that the incident of October 4, 2013, was irrelevant and that the incident of January 26, 2014, was only admissible to rebut any claim of self-defense constitutes an abuse of discretion. Both are clearly relevant as prior incidents of domestic abuse between the parties. Considered altogether, the evidence of the prior offenses is highly probative to establish that there was a volatile relationship between the couple, that there was a pattern of abuse, and that the level of violence escalated. The October 2013 incident resulted in bruising to Penny's neck, the January 2014 incident resulted in bruising and scratches to Penny's neck, and the April 2014 incident resulted in bruising and a knife wound. Moreover, the conviction for the January 2014 incident occurred exactly one month prior to

Penny's murder.  The incidents also establish Defendant has a pattern of denying accountability or claiming self-defense.

All relevant evidence is prejudicial.  The more relevant the evidence is, the more prejudicial it is to the defense.  The courts are only to guard against the danger of unfair prejudice.  Louisiana Code of Evidence Article 412.4 allows the admission of other incidents of domestic abuse for any relevant purpose (including the defendant's character and his acts in conformity therewith) subject only to the balancing test established by La.Code Evid. art. 403.

After carefully reviewing the evidence in light of La.Code Evid. art. 403 and La.Code Evid. art. 412.4, we find the probative value of the evidence outweighs any danger of unfair prejudice to Defendant. Thus, we find the trial court abused its discretion, grant the State's writ application, rule the incidents of October 4, 2013, and January 26, 2014, admissible for any relevant purpose, and remand the matter for further proceedings in conformity with this court's ruling.

**REHEARING GRANTED.**
**WRIT GRANTED AND MADE PEREMPTORY.**